UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

MALIK AZ' RAEL MOSBY,

                                        Plaintiff,

                                                                9:06-CV-1165
v.                                                              (NAM/GHL)

DR. MARSHALL TRABOUT, Medical Director;
DR. BEZERGANIAN, Psychiatrist;
DEBRA DeBARTOLO, Head Nurse;
JOANNE CONWAY, Mental Health Liaison;
DEBRA NIEMI, Chief of Corrections;
LT. RAY BUNCE, Commanding Officer;
SGT. WALPOLE, Shift Supervisor;
SGT. MASTERS, Corrections Officer;
SGT. DaMATTEO, Corrections Officer;
MICHAEL SEARLES, Corrections Officer;
HARRY HAWK, Corrections Officer;
DARWIN SMITH, Corrections Officer;
BRENDA FAIRBANKS, Corrections Officer;
SEAN SCHOLLENBERG, Corrections Officer;
JOHN DOE, Shift Supervisor; and
JOHN DOE, Corrections Officer,

                                        Defendants.

_____

APPEARANCES:                                       OF COUNSEL:

MALIK AZ' RAEL MOSBY, 06-B-1604
   Plaintiff, *Pro Se*
Great Meadow Correctional Facility
Box 51
Comstock, NY 12821

HON. JONATHAN WOOD                                 JONATHAN WOOD, ESQ.
Tompkins County Attorney
   Counsel for County Defendants
125 East Court Street
Tompkins County Office Building
Ithaca, NY 14850

GEORGE H. LOWE, United States Magistrate Judge

### REPORT-RECOMMENDATION

This prisoner civil rights action, commenced *pro se* pursuant to 42 U.S.C. § 1983, has

been referred to me for Report and Recommendation by the Honorable Norman A. Mordue,

Chief United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c) of the

Local Rules of Practice for this Court.  Generally, the Amended Complaint of Malik Az'Rael

Mosby ("Plaintiff") alleges that, while he was incarcerated in the Tompkins County Jail between

August of 2005 and June of 2006, 16 employees of Tompkins County violated his rights under

the First, Fourth, Fifth, Sixth, Eighth, Ninth and/or Fourteenth Amendments by (1) providing him

with inadequate mental health treatment and medical care, (2) wrongfully depriving him of

personal property including legal, religious and medical materials, (3) assaulting him and/or

failing to protect him from assault, (4) and/or denying him the right to call witnesses at a

disciplinary hearing.  (*See generally* Dkt. No. 7, "Facts" & "Causes of Action" [Plf.'s Am.

Compl.].)[1]

Currently pending before the Court is a motion to dismiss for failure to state a claim

pursuant to Fed. R. Civ. P. 12(b)(6), filed by 13 of the 16 named Defendants.  (Dkt. No. 31, Part

---

[1]     Specifically, these 16 employees were as follows: (1) Dr. Marshall Trabout,
Medical Director; (2) Dr. John Bezerganian, Psychiatrist; (3) Debra DeBartolo, Head Nurse; (4)
Joanne Conway,  Mental Health Liaison; (5) Debra Niemi, Chief of Corrections; (6) Lt. Ray
Bunce, Commanding Officer; (7) Sgt. Walpole, Shift Supervisor; (8) Sgt. Masters, Corrections
Officer; (9) Sgt. DaMatteo, Corrections Officer; (10) Michael Searles, Corrections Officer; (11)
Harry Hawk, Corrections Officer; (12) Darwin Smith, Corrections Officer; (13) Brenda
Fairbanks, Corrections Officer; (14) Sean Schollenberg, Corrections Officer; (15) John Doe,
Shift Supervisor; and (16) John Doe, Corrections Officer.  (Dkt. No. 7.)

2

1 [Notice of Motion]; Dkt. No. 31, Part 3, at 1 [Defs.' Memo. of Law].)[2]  The three Defendants

on whose behalf the motion to dismiss is not expressly made are (1) Dr. Marshall Trabout, who

was not served with process until six weeks after the filing of the motion to dismiss (*compare*

Dkt. No. 31 *with* Dkt. No. 38), (2) Sean Schollenberg, who was never served with process (*see*

Dkt. No. 25), and (3) the John Doe Defendant identified by Plaintiff as the "Shift Supervisor,"

who was also never served with process (*see generally* Docket).

Generally, the motion to dismiss is based on three grounds: (1) Plaintiff's failure to

exhaust his available administrative remedies before filing suit; (2) Plaintiff's failure to state a

claim for non-physical injuries caused by inadequate medical care; and (3) Plaintiff's failure to

state a claim against Defendant Bunce for lost legal property.  (Dkt. No. 31, Part 4, at 3-5 [Defs.'

Memo. of Law].)  For the reasons that follow, I recommend that Defendants' motion be denied in

part and granted in part.  I also recommend that Counts One and Two of Plaintiff's Amended

Complaint be *sua sponte* dismissed with prejudice for failure to state a claim, pursuant to 28

U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).  Finally, I recommend that Plaintiff's claims

against Sean Schollenberg and the John Doe Defendant identified as the "Shift Supervisor" be

*sua sponte* dismissed for failure to serve and/or failure to comply with an Order of the Court.

---

[2]        Specifically, these 13 Defendants are as follows: (1) Dr. John Bezerganian, Psychiatrist; (2) Debra DeBartolo, Head Nurse; (3) Joanne Conway, Mental Health Liaison; (4) Debra Niemi, Chief of Corrections; (5) Lt. Ray Bunce, Commanding Officer; (6) Sgt. Walpole, Shift Supervisor; (7) Sgt. Masters, Corrections Officer; (8) Sgt. DaMatteo, Corrections Officer; (9) Michael Searles, Corrections Officer; (10) Harry Hawk, Corrections Officer; (11) Darwin Smith, Corrections Officer; (12) Brenda Fairbanks, Corrections Officer; and (13) John Doe, Corrections Officer, identified by defense counsel as "Officer Haines."  (Dkt. No. 31, Part 3, at 1 [Defs.' Memo. of Law].)

# I.      RECENTLY CLARIFIED LEGAL STANDARD FOR MOTIONS TO DISMISS

Under Fed. R. Civ. P. 12(b)(6), a defendant may move to dismiss a complaint for "failure

to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  It has long been

understood that a defendant may base such a motion on either or both of two grounds: (1) a

challenge to the "sufficiency of the pleading" under Rule 8(a)(2);[3] or (2) a challenge to the legal

cognizability of the claim.[4]

---

[3]      *See* 5C Wright & Miller, *Federal Practice and Procedure* § 1363 at 112 (3d ed.
2004) ("A motion to dismiss for failure to state a claim for relief under Rule 12(b)(6) goes to the
sufficiency of the pleading under Rule 8(a)(2).") [citations omitted]; *Princeton Indus., Inc. v.
Rem*, 39 B.R. 140, 143 (Bankr. S.D.N.Y. 1984) ("The motion under F.R.Civ.P. 12(b)(6) tests the
formal legal sufficiency of the complaint as to whether the plaintiff has conformed to F.R.Civ.P.
8(a)(2) which calls for a 'short and plain statement' that the pleader is entitled to relief."); *Bush v.
Masiello*, 55 F.R.D. 72, 74 (S.D.N.Y. 1972) ("This motion under Fed. R. Civ. P. 12(b)(6) tests
the formal legal sufficiency of the complaint, determining whether the complaint has conformed
to Fed. R. Civ. P. 8(a)(2) which calls for a 'short and plain statement that the pleader is entitled
to relief.'").

[4]      *See  Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002) ("These allegations
give respondent fair notice of what petitioner's claims are and the grounds upon which they rest.
 . . .  In addition, they state claims upon which relief could be granted under Title VII and the
ADEA."); *Wynder v. McMahon*, 360 F.3d 73, 80 (2d Cir. 2004) ("There is a critical distinction
between the notice requirements of Rule 8(a) and the requirement, under Rule 12(b)(6), that a
plaintiff state a claim upon which relief can be granted."); *Phelps v. Kapnolas*, 308 F.3d 180, 187
(2d Cir. 2002) ("Of course, none of this is to say that a court should hesitate to dismiss a
complaint when the plaintiff's allegation . . . fails as a matter of law.") [citation omitted]; *Kittay
v. Kornstein*, 230 F.3d 531, 541 (2d Cir. 2000) (distinguishing between a failure to meet Rule
12[b][6]'s requirement of stating a cognizable claim and Rule 8[a]'s requirement of disclosing
sufficient information to put defendant on fair notice); *In re Methyl Tertiary Butyl Ether Prods.
Liab. Litig.*, 379 F. Supp.2d 348, 370 (S.D.N.Y. 2005) ("Although Rule 8 does not require
plaintiffs to plead a theory of causation, it does not protect a legally insufficient claim [under
Rule 12(b)(6)].") [citation omitted]; *Util. Metal Research & Generac Power Sys.*, 02-CV-6205,
2004 U.S. Dist. LEXIS 23314, at *4-5 (E.D.N.Y. Nov. 18, 2004) (distinguishing between the
legal sufficiency of the cause of action under Rule 12[b][6] and the sufficiency of the complaint
under Rule 8[a]); *accord, Straker v. Metro Trans. Auth.*, 331 F. Supp.2d 91, 101-02 (E.D.N.Y.
2004); *Tangorre v. Mako's, Inc.*, 01-CV-4430, 2002 U.S. Dist. LEXIS 1658, at *6-7 (S.D.N.Y.
Jan. 30, 2002) (identifying two sorts of arguments made on a Rule 12[b][6] motion--one aimed at
the sufficiency of the pleadings under Rule 8[a], and the other aimed at the legal sufficiency of

Rule 8(a)(2) requires that a pleading include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Such a statement must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."[5] The purpose of this rule is to "facilitate a proper decision on the merits."[6] A complaint that fails to comply with this rule "presents far too a heavy burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of [plaintiff's] claims."[7]

The Supreme Court has long characterized this pleading requirement under Rule 8(a)(2) as "simplified" and "liberal," and has repeatedly rejected judicially established pleading requirements that exceed this liberal requirement.[8] However, it is well established that even this

---

the claims).

[5]    *Dura Pharm., Inc. v. Broudo*, 125 S. Ct. 1627, 1634 (2005) (holding that the complaint failed to meet this test) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 [1957]); *see also Swierkiewicz*, 534 U.S. at 512 (quoting *Conley*, 355 U.S. at 47); *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168 (1993) (quoting *Conley*, 355 U.S. at 47).

[6]    *See Swierkiewicz*, 534 U.S. at 514 (quoting *Conley*, 355 U.S. at 48).

[7]    *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y. 1996) (McAvoy, J.), *aff'd*, 113 F.3d 1229 (2d Cir. 1997) (unpublished table opinion). Consistent with the Second Circuit's application of § 0.23 of the Rules of the U.S. Court of Appeals for the Second Circuit, I cite this unpublished table opinion, not as precedential authority, but merely to show the case's subsequent history. *See, e.g.*, *Photopaint Tech., LLC v. Smartlens Corp.*, 335 F.3d 152, 156 (2d Cir. 2003) (citing, for similar purpose, unpublished table opinion of *Gronager v. Gilmore Sec. & Co.*, 104 F.3d 355 [2d Cir. 1996]).

[8]    *See, e.g.*, *Swierkiewicz*, 534 U.S. at 513-514 (characterizing Fed. R. Civ. P. 8[a][2]'s pleading standard as "simplified").

liberal notice pleading standard "has its limits."[9]  As a result, several Supreme Court and Second Circuit decisions exist, holding that a pleading has failed to meet this liberal notice pleading standard.[10]

Most notably, in the recent decision of *Bell Atl. Corp. v. Twombly*, the Supreme Court, in reversing an appellate decision holding that a complaint had stated a claim upon which relief could be granted, "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  127 S. Ct. 1955, 1968-69 (2007).[11]  Rather than turning on the

---

[9]        2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003).

[10]        *See, e.g.*, *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-74 (2007) (pleading did not meet Rule 8[a][2]'s liberal requirement), *accord*, *Dura Pharm.*, 125 S. Ct. at 1634-35, *Christopher v. Harbury*, 536 U.S. 403, 416-22 (2002), *Freedom Holdings, Inc. v. Spitzer*, 357 F.3d 205, 234-35 (2d Cir. 2004), *Gmurzynska v. Hutton*, 355 F.3d 206, 208-09 (2d Cir. 2004). Several unpublished decisions exist from the Second Circuit affirming the Rule 8(a)(2) dismissal of a complaint after *Swierkiewicz*.  *See, e.g.*, *Salvador v. Adirondack Park Agency of the State of N.Y.*, No. 01-7539, 2002 WL 741835, at *5 (2d Cir. Apr. 26, 2002) (affirming pre-*Swierkiewicz* decision from Northern District of New York interpreting Rule 8[a][2]).  Although these decisions are not themselves precedential authority, *see* Rules of the U.S. Court of Appeals for the Second Circuit, § 0.23, they appear to acknowledge the continued precedential effect, after *Swierkiewicz*, of certain cases from within the Second Circuit interpreting Rule 8(a)(2).  *See Khan v. Ashcroft*, 352 F.3d 521, 525 (2d Cir. 2003) (relying on summary affirmances because "they clearly acknowledge the continued precedential effect" of *Domond v. INS*, 244 F.3d 81 [2d Cir. 2001], after that case was "implicitly overruled by the Supreme Court" in *INS v. St. Cyr*, 533 U.S. 289 [2001]).

[11]        The Court in *Twombly* further explained: "The phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been adequately stated, it may be supported by showing any set of facts consistent with the allegations in the complaint. . . .  *Conley*, then, described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival."  *Twombly*, 127 S. Ct. at 1969.

*conceivability* of an actionable claim, the Court clarified, the Rule 8 standard turns on the "plausibility" of an actionable claim. *Id.* at 1965-74.  More specifically, the Court held that, for a plaintiff's complaint to state a claim, his "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]" assuming, of course, that all the allegations in the complaint are true. *Id.* at 1965 [citations omitted].  What this means, on a practical level, is that there must be "plausible grounds to infer [actionable conduct]," or, in other words, "enough fact to raise a reasonable expectation that discovery will reveal evidence of [actionable conduct]." *Id.*; *see also Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007) ("[W]e believe the [Supreme] Court [in *Bell Atlantic Corp. v. Twombly*] is . . . requiring a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*.") [emphasis in original].

Having said that, it should be emphasized that, "[i]n reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor."[12]  Moreover, it should be noted that "[t]his standard is applied with even greater force where the plaintiff alleges civil rights violations or where the complaint is submitted *pro se*."[13]  In other words, while all pleadings are to be construed liberally, *pro se* civil rights pleadings are generally to be construed with an *extra*

---

[12]     *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (affirming grant of motion to dismiss) [citation omitted]; *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir. 1994).

[13]     *Hernandez*, 18 F.3d at 136 [citation omitted]; *see also Deravin v. Kerik*, 335 F.3d 195, 200 (2d Cir. 2003) [citations omitted]; *Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 619 (2d Cir. 1999) [citation omitted].

degree of liberality.  Indeed, generally "courts must construe *pro se* pleadings broadly, and interpret them to raise the strongest arguments that they suggest."[14]  In addition, when addressing a *pro se* complaint, generally a district court "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."[15]

However, granting a *pro se* plaintiff an opportunity to amend is not required where the plaintiff has already been given a chance to amend his pleading.[16]  Moreover, when a plaintiff is proceeding *pro se*, "all normal rules of pleading are not absolutely suspended."[17]  For example,

<hr>

[14]      *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000) (finding that plaintiff's conclusory allegations of a due process violation were insufficient) (internal quotation and citation omitted).

[15]      *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (internal quotation and citation omitted); *see also* Fed. R. Civ. P. 15(a) (leave to amend "shall be freely given when justice so requires").

[16]      *Cagle v. Perry*, 04-CV-1151, 2007 WL 3124806, at *6, n.45 (N.D.N.Y. Oct. 24, 2007) (McAvoy, J., adopting report-recommendation of Lowe, M.J.); *Savage v. Brue*, 05-CV-0857, 2007 WL 3047110, at *5, n.35 (N.D.N.Y. Oct. 18, 2007) (Sharpe, J., adopting report-recommendation of Lowe, M.J.); *Koehl v. Greene*, 06-CV-0478, 2007 WL 2846905, at *3, n.13 (N.D.N.Y. Sept. 26, 2007) (Kahn, J., adopting report-recommendation of Lowe, M.J.); *Muniz v. Goord*, 04-CV-0479, 2007 WL 2027912, at *2, n.14 (N.D.N.Y. July 11, 2007) (McAvoy, J., adopting report-recommendation of Lowe, M.J.); *Richards v. Goord*, 04-CV-1433, 2007 WL 201109, at *5, n.34 (N.D.N.Y. Jan. 23, 2007) (Kahn, J., adopting report-recommendation of Lowe, M.J.); *Ariola v. Onondaga County Sheriff's Dept.*, 04-CV-1262, 2007 WL 119453, at *2, n.13 (N.D.N.Y. Jan. 10, 2007) (Hurd, J., adopting report-recommendation of Lowe, M.J.); *Collins v. Fed. Bur. of Prisons*, 05-CV-0904, 2007 WL 37404, at *4, n.30 (N.D.N.Y. Jan. 4, 2007) (Kahn, J., adopting report-recommendation of Lowe, M.J.); *Goros v. Cent. Office Review Comm.*, 03-CV-0407, 2006 WL 2794415, at *5, n.18 (N.D.N.Y. Sept., 26, 2006) (Sharpe, J., adopting report-recommendation of Lowe, M.J.); *Williams v. Weaver*, 03-CV-0912, 2006 WL 2799417, at *4, n.16 (N.D.N.Y. Sept. 26, 2006)  (Kahn, J., adopting report-recommendation of Lowe, M.J.).

[17]      *Stinson v. Sheriff's Dep't of Sullivan County*, 499 F. Supp. 259, 262 & n.9 (S.D.N.Y. 1980); *accord*, *Standley v. Dennison*, 05-CV-1033, 2007 WL 2406909, at *6, n.27

an opportunity to amend should be denied where "the problem with [plaintiff's] causes of action is substantive" such that "[b]etter pleading will not cure it."[18]

Finally, it should be remembered that Fed. R. Civ. P. 12(b)(6) motions to dismiss are limited to the facts alleged in the complaint and must be converted into a Fed. R. Civ. P. 56 motion for summary judgment if the court considers materials outside the pleadings.[19]  However, of course, the court may, without converting the motion to dismiss into a motion for summary judgment, consider (1) any documents relied on and/or referenced in the complaint (even if those documents are not attached to the complaint, if those documents are provided by defendants in

---

(N.D.N.Y. Aug. 21, 2007) (Sharpe, J., adopting report-recommendation of Lowe, M.J.); *Muniz*, 2007 WL 2027912, at *2 (McAvoy, J., adopting report-recommendation of Lowe, M.J.); *DiProjetto v. Morris Protective Serv.*, 489 F. Supp.2d 305, 307 (W.D.N.Y. 2007); *Cosby v. City of White Plains*, 04-CV-5829, 2007 WL 853203, at *3 (S.D.N.Y. Feb. 9, 2007); *Lopez v. Wright*, 05-CV-1568, 2007 WL 388919, at *3, n.11 (N.D.N.Y. Jan. 31, 2007) (Mordue, C.J., adopting report-recommendation of Lowe, M.J.); *Richards v. Goord*, 04-CV-1433, 2007 WL 201109, at *5 (N.D.N.Y. Jan. 23, 2007) (Kahn, J., adopting report-recommendation of Lowe, M.J.); *Ariola v. Onondaga County Sheriff's Dept.*, 04-CV-1262, 2007 WL 119453, at *2, n.13 (N.D.N.Y. Jan. 10, 2007) (Hurd, J., adopting report-recommendation of Lowe, M.J.); *Collins*, 2007 WL 37404, at *4 (Kahn, J., adopting report-recommendation of Lowe, M.J.).

[18]     *Cuoco*, 222 F.3d at 112 (finding that repleading would be futile) [citation omitted]; *see also Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.") (affirming, in part, dismissal of claim with prejudice) [citation omitted].

[19]     *See* Fed. R. Civ. P. 12(b) ("If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.").

their motion to dismiss),[20] and (2) any documents provided by the plaintiff in opposition to defendants' motion to dismiss, to the extent those documents are consistent with the allegations in the complaint.[21]

---

[20]    *See Chambers v. Time Warner*, 282 F.3d 147, 153 & n.3 (2d Cir. 2002) (district court's consideration of certain contracts attached to defendant's motion to dismiss was appropriate where plaintiff relied on documents in drafting his complaint) [collecting cases]; *Levy v. Southbrook Int'l Invest., Ltd.*, 263, F.3d 10, 13, n.3 (2d Cir. 2001) (noting that "it was appropriate for the district court to refer to documents attached to the motion to dismiss since the documents were referred to in the complaint") [citation omitted]; *San LeandroEmergency Med. Group v. Philip Morris Co., Inc.*, 75 F.3d 801, 808 (2d Cir. 1996) (a document that is "integral" to the complaint may be considered by the district court on a motion to dismiss "despite the fact that the complaint only contains limited quotations from that document") [collecting cases]; *Harsco Corp. v. Segui*, 91 F.3d 337, 341, n.1 (2d Cir. 1996) ("This letter, though cited to and described in the complaint, was not attached to the complaint.  We may nonetheless review the letter in its entirety [in deciding defendants' motion to dismiss].") [citation omitted]; *Cortec Indus., Inc. v. Sum Holding LP*, 949 F.2d 42, 48 (2d Cir. 1991) ("When plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated.");  *I. Meyer Pincus & Assocs., P.C. v. Oppenheimer & Co., Inc.*, 936 F.2d 759, 762 (2d Cir. 1991) ("We . . . decline to close our eyes to the contents of the prospectus and to create a rule permitting a plaintiff to evade a properly argued motion to dismiss simply because plaintiff has chosen not to attach the prospectus to the complaint or to incorporate it by reference.") [citations omitted].

[21]    "Generally, a court may not look outside the pleadings when reviewing a Rule 12(b)(6) motion to dismiss.  However, the mandate to read the papers of *pro se* litigants generously makes it appropriate to consider plaintiff's additional materials, such as his opposition memorandum."  *Gadson v. Goord*, 96 Civ. 7544, 1997 WL 714878, *1, n. 2 (S.D.N.Y. Nov. 17, 1997) (citing, *inter alia*, *Gil v. Mooney*, 824 F.2d 192, 195 [2d Cir. 1987] [considering plaintiff's response affidavit on motion to dismiss]).  Stated another way, "in cases where a pro se plaintiff is faced with a motion to dismiss, it is appropriate for the court to consider materials outside the complaint to the extent they 'are consistent with the allegations in the complaint.'"  *Donhauser v. Goord*, 314 F. Supp.2d 119, 212 (N.D.N.Y. 2004) (considering factual allegations contained in plaintiff's opposition papers) (citations omitted), *vacated in part on other grounds*, 317 F. Supp.2d 160 (N.D.N.Y. 2004).

## II.     DISCUSSION

### A.     Exhaustion of Administrative Remedies

During their exhaustion argument, Defendants rely heavily, if not exclusively, on a document that was neither referenced in, nor attached to, Plaintiff's Amended Complaint– specifically, the affidavit of Defendant Debra Niemi.[22]  In so doing, Defendants cross the line between an analysis of a pleading pursuant to Fed. R. Civ. P. 12(b)(6) and an analysis of record evidence pursuant to Fed. R. Civ. P. 56.  As explained above at the end of Part I of this Report-Recommendation, consideration of a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) is limited to consideration of the facts alleged in a complaint.  If a court, in deciding such a motion to dismiss, considers matters outside the complaint, the court is effectively converting the motion to dismiss into a motion for summary judgment pursuant to Fed. R. Civ. P. 56.  This a court may not do without providing notice to the opposing party.

Under the circumstances, I decline to *sua sponte* convert Defendants' motion to dismiss into a motion for summary judgment, and I recommend that the Court decline to do so as well. Plaintiff has not been given the required notice of such a conversion of Defendants' motion, nor has he been given an adequate opportunity to present evidence to create an issue of fact, nor has he even been given an adequate opportunity to conduct discovery in this action.  The Court recently refused to consider such materials on a motion to dismiss under very similar circumstances.  *See Pierce v. Monell*, 06-CV-1290, 2007 WL 2847317, at *5-8 (N.D.N.Y. Sept.

---

[22]     (*See* Dkt. No. 31, Part 3, at 2 [Defs.' Mem. of Law, citing Affid. of Def. Niemi as evidence of Plaintiff's failure to exhaust his available administrative remedies]; Dkt. No. 31, Part 2, ¶¶ 3-11 [Affid. of Def. Niemi, describing grievance process at Tompkins County Jail, asserting that Plaintiff was familiar with that grievance process, and asserting that Plaintiff failed to complete that grievance process with regard to all but two claims asserted in this action].)

26, 2007) (Kahn, J., adopting, on de novo review, Report-Recommendation by Lowe, M.J.).

Moreover, the Court would be at a severe disadvantage in deciding such a motion for summary judgment based on the current briefing of the parties.  In particular, Defendants have not provided the Court with a Statement of Material Facts.  For this reason alone, such a motion for summary judgment would be denied.  N.D.N.Y. L.R. 7.1(a)(3) ("Failure of the moving party to submit an accurate and complete Statement of Material Facts shall result in a denial of the motion.") [emphasis in original].

Having said that, a court may, under certain circumstances, consider documents outside the four corners of a plaintiff's complaint in deciding a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).  These circumstances include (1) when the documents are relied on and/or referenced in, and attached to, the complaint and (2) when the documents are provided by the plaintiff in opposition to a defendant's motion to dismiss, and the material contained in those documents is consistent with the allegations in the complaint.  *See*, *supra*, notes 20 & 21 of this Report-Recommendation (and accompanying text).

Here, the first of these circumstances applies, since Plaintiff's Amended Complaint references, and attaches, 25 pages of exhibits.  (*See* Dkt. No. 7.)  Whether the second of these circumstances applies is somewhat questionable to me.  Granted, Plaintiff attaches 15 pages of exhibits to his Opposition Memorandum of Law, and generally those pages (which are provided to address matters discussed in Defendant Niemi's affidavit) appear consistent with the allegations contained in this Amended Complaint.  (*Compare* Dkt. No. 37 *with* Dkt. No. 7.)  However, the underlying reason that such materials may sometimes be considered on a motion to dismiss is the desire to afford inexperienced *pro se* civil rights litigants with special solicitude.

12

*See*, *supra*, note 21 of this Report-Recommendation.  A strong argument exists that, if consideration of such materials would not inure to a *pro se* civil rights litigant's benefit (i.e., by resulting in dismissal of his action), then such consideration would not be *solicitous* and should not occur.  In any event, because my consideration of those materials does not change the outcome of this Report-Recommendation, I will consider those materials, for the sake of argument.

The reason that my consideration of those materials does not change the outcome of this Report-Recommendation is that Defendants' attempt to raise their failure-to-exhaust argument on a Fed. R. Civ. P. 12(b)(6) motion to dismiss for failure to state a claim is inherently flawed.  For some years now, it has been the majority rule (followed by the Second Circuit) that a prisoner's fulfillment of his duty to exhaust his available administrative remedies under the Prison Litigation Reform Act ("PLRA") is not a fact that the prisoner had to plead in order to state a claim under 42 U.S.C. § 1983 but a fact that may be challenged by a defendant through an affirmative defense (such as on a motion for summary judgment pursuant to Fed. R. Civ. P. 56, or a motion to dismiss for lack of subject-matter jurisdiction pursuant to Fed. R. Civ. P. 12[b][1]) established by the PLRA.  *See, e.g., Jenkins v. Haubert*, 179 F.3d 19, 28-29 (2d Cir. 1999) ("Because, under the PLRA, a prisoner must exhaust administrative remedies before filing a §1983 suit . . ., a defendant in a prisoner § 1983 suit may also assert as an affirmative defense the plaintiff's failure to comply with the PLRA's requirements."); *Snider v. Melindez*, 199 F.3d 108, 114 (2d Cir. 1999) ("A court may not dismiss for failure to exhaust administrative remedies unless the court determines that such remedies are available.  Snider's answers [on a form complaint] cannot establish that.").

13

Recently, the Supreme Court upheld this interpretation of the exhaustion requirement, prohibiting circuits (such as the Sixth, Tenth and Eleventh Circuits) from using exhaustion as a heightened pleading requirement in prisoner civil rights case. *See Jones v. Block*, 127 S. Ct. 910, 914-915, 918-923 (2007). A prisoner has no independent *duty* to plead facts plausibly suggesting that he exhausted his available administrative remedies, in order to state an actionable claim under 42 U.S.C. § 1983. *Block*, 127 S. Ct. at 919-21. "[T]his is not to say that failure to exhaust cannot be a basis for dismissal for failure to state a claim." *Id*. at 921. If a prisoner *chooses* to plead facts regarding exhaustion, and those facts plausibly suggest that he failed to exhaust his available administrative remedies, then his Complaint may be dismissed for failure to state a claim. *Id*. at 920-21. Simply stated, if a prisoner says nothing or little about exhaustion in his civil rights complaint, he is likely protected from a Fed. R. Civ. P. 12(b)(6) motion to dismiss premised on failure to exhaust. If he says too much about exhaustion in that complaint so that his non-exhaustion is readily apparent, however, he may "plead himself out of court," as the saying goes.

Here, Defendants have pointed to no portions of Plaintiff's Amended Complaint, or the exhibits to his Amended Complaint and his Opposition Memorandum of Law, which regard the availability of his administrative remedies, or his exhaustion (or non-exhaustion) of those remedies. (*See* Dkt. No. 31, Part 3 [Defs.' Memo. of Law].) Because it is Defendants' burden to show cause for the granting of their Fed. R. Civ. P. 12(b)(6) motion to dismiss for failure to state a claim,[23] their motion should be denied to the extent it is premised on a failure-to-exhaust

---

[23]      *See* Fed. R. Civ. P. 7(b)(1) ("An application to the court for an order shall be by motion which . . . shall state with particularity the grounds therefor . . . ."); N.D.N.Y. L.R. 7.1(b)(3) (providing that even unopposed motions cannot be granted unless "the moving party

argument.

Of course, the Court has the authority, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), to *sua sponte* review Plaintiff's Amended Complaint to determine if he has pled facts plausibly suggesting that he failed to exhaust his available administrative remedies. However, without further briefing by the parties, I am unable to conclude, from an independent review of Plaintiff's Amended Complaint (and the exhibits to his Amended Complaint and his Opposition Memorandum of Law), that Plaintiff has pled facts plausibly suggesting that he failed to exhaust his available administrative remedies.

Rather, the documents appear to allege facts plausibly suggesting that Plaintiff filed various grievances that were either ignored by Defendants or interfered with by Defendants so as to wrongfully render the grievances "untimely."  (*See* Dkt. No. 7, Part 1, ¶¶ 3(o), 6(e), 6(j), 12(b) [Plf.'s Am. Compl.]; Dkt. No. 7, Part 2, at Exs. 1-8 [Exhibits to Plf.'s Am. Compl.]; Dkt. No. 37, Plf.s' Memo. of Law, at 1-2, 4; Dkt. No. 37, Plf.s' Exhibits.)  For example, two of those exhibits attached to Plaintiff's Amended Complaint contain allegations that Defendant Bunce was "intercepting grievances, and sabotaging them" by wrongfully deeming them "untimely."  (Dkt. No. 7, Part 2, Exs. 3, 5 [Exhibits to Plf.'s Am. Compl.].)  Moreover, Plaintiff's Opposition Memorandum of Law, and the exhibits attached thereto, contain allegations that Defendants "impeded . . . plaintiff's grievance process," attempted to "sabotage plaintiff's right to grieve," and wrongfully "witheld [sic]" Plaintiff's grievances so as to render them "untimely."  (Dkt. No. 37, Plf.s' Opp. Memo. of Law, at 1-2, 4; Dkt. No. 37, Plf.s' Exhibits.)  Finally, one of the exhibits attached to Plaintiff's Amended Complaint contains an allegation that the misconduct at issue in

has met its burden to demonstrate entitlement to the relief requested therein").

this action was "something I plan to deal with at the highest levels of government." (Dkt. No. 7, Part 2, at Ex. 1 [Exhibits to Plf.'s Am. Compl.].)

Finally, the Court has the authority to *sua sponte* re-characterize Defendants' motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6)[24] as a motion to dismiss for lack of subject-matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1). This authority is derived from Fed. R. Civ. P. 12(h)(3), which provides that "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." Fed. R. Civ. P. 12(h)(3). However, even if I were to so re-characterize Defendants' motion, I would not be able to recommend dismissal based on the current briefing of the parties.

This is because any *appearance* that the Court lacks subject-matter jurisdiction (due to the fact that Plaintiff failed to exhaust his available administrative remedies) is *clouded* by the fact that Defendants' have adduced evidence that Plaintiff exhausted his administrative remedies with regard to at least two of his eight claims in this action. (Dkt. No. 31, Part 2, ¶¶ 7-8 [Affid. of Niemi].) With respect to the other six claims, any appearance that the Court lacks subject-matter jurisdiction (due to the fact that Plaintiff failed to exhaust his available administrative remedies) is clouded by the above-referenced statements about the "interception" of his grievances, and the "sabotage" of the grievance process. I note that those statements occurred in Plaintiff's Amended Complaint (which, because it is verified, generally carries the force of an affidavit), as well as in the exhibits attached to that Amended Complaint and in the exhibits

---

[24]   As stated earlier, Defendants expressly characterize their motion as one pursuant to Fed. R. Civ. P. 12(b)(6). (Dkt. No. 31, Part 1 [Notice of Motion].)

attached to his Opposition Memorandum of Law (which also contains a verification).[25]  In

particular, I note that Plaintiff's letter of April 15, 2006, to Defendant Niemi references his

Grievance Numbers 494, 495, and 496–which are three grievances with regard to which

Defendant Niemi, in her affidavit, asserts that Plaintiff failed to exhaust his administrative

remedies.  (*Compare* Dkt. No. 31, Part 2, ¶ 9 [Affid. of Niemi] with Dkt. No. 37, at 16-17

[Exhibits to Plf.'s Opp. Memo. of Law].)  While I cannot find in the current record any evidence

of subsequent appeals by Plaintiff to the New York State Commission of Corrections Citizens

Policy and Complaint Review Board with regard to Grievance Numbers 494, 495, and 496, I note

that Defendants have not adduced competent evidence (such as an affidavit from a member or

clerical employee of that Board) that Plaintiff filed no such appeals with that Board.  (Dkt. No.

31, Part 2, ¶ 9 [Affid. of Niemi, not stating how she possessed personal knowledge that Plaintiff

---

[25]        Generally, "[m]otions brought pursuant to Rule 12(h)(3) are subject to the same
standard as motions to dismiss for want of subject matter jurisdiction brought pursuant to Rule
12(b)(1)." *Canadian St. Regis Band of Mohawk Indians v. New York*, 82-CV-1114, 2005 U.S.
Dist. LEXIS 27144, at *29 (N.D.N.Y. May 18, 2005) (Lowe, M.J.) [citation omitted], *adopted on
de novo review*, 2005 U.S. Dist. LEXIS 27146 (N.D.N.Y. June 8, 2005).  The main "distinction
between a Rule 12(h)(3) motion and a Rule 12(b)(1) motion is simply that the former may be
asserted at any time and need not be responsive to any pleading of the other party." *Canadian St.
Regis*, 2005 U.S. Dist. LEXIS 27144, at *29 [citation omitted].  Once subject matter jurisdiction
is successfully "challenged" on a motion filed pursuant to Fed. R .Civ. P. 12(b)(1) and/or
12(h)(3), "[t]he party asserting subject matter jurisdiction must prove that the court has such
jurisdiction by a preponderance of the evidence." *Id*. [citation omitted].  However, in deciding
whether the party asserting subject-matter jurisdiction has met this burden of proof, a court must
"accept as true all material factual allegations in the complaint." *Atl. Mut. Ins. Co. v. Balfour
Marclaine Int'l, Ltd.,* 968 F.2d 196, 198 (2d Cir. 1992) [citations omitted], *accord*, *Canadian St.
Regis*, 2005 U.S. Dist. LEXIS 27144, at *29 [citation omitted].  In addition, to the extent that
there are "disputed jurisdictional fact issues," a court "*must* [consult evidence outside the
pleadings] if resolution of a proffered factual issue may result in the dismissal of the complaint
for want of jurisdiction." *Robinson v. Gov't of Malay.*, 269 F.3d 133, 140-141 & n.6 (2d Cir.
2001) (motion to dismiss under 12[b][1] for lack of subject matter jurisdiction) [internal
quotation marks and citations omitted; emphases added], *accord*, *Canadian St. Regis*, 2005 U.S.
Dist. LEXIS 27144, at *30.

did not exhaust his appeals on Grievance Numbers 494, 495, and 496].)  Furthermore, even if he

did in fact fail to file such appeals, I note that Plaintiff appears to allege that such a failure may

have resulted from various Defendants' efforts to frustrate his appeals (through acts of

"interference" and "sabotage").

Implicit in my reasoning with regard to this last point is my recognition that the Second

Circuit has held that a prisoner may be excused from exhausting his administrative remedies

under certain circumstances.  More specifically, the Second Circuit has held that a three-part

inquiry is appropriate where a defendant contends that a prisoner has failed to exhaust his

available administrative remedies, as required by the PLRA.  *See Hemphill v. State of New York*,

380 F.3d 680, 686, 691 (2d Cir. 2004).  First, "the court must ask whether [the] administrative

remedies [not pursued by the prisoner] were in fact 'available' to the prisoner."  *Hemphill*, 380

F.3d at 686 (citation omitted).  Second, if those remedies were available, "the court should . . .

inquire as to whether [some or all of] the defendants may have forfeited the affirmative defense

of non-exhaustion by failing to raise or preserve it . . . or whether the defendants' own actions

inhibiting the [prisoner's] exhaustion of remedies may estop one or more of the defendants from

raising the plaintiff's failure to exhaust as a defense."  *Id.* (citations omitted).  Third, if the

remedies were available and some of the defendants did not forfeit, and were not estopped from

raising, the non-exhaustion defense, "the Court should consider whether 'special circumstances'

have been plausibly alleged that justify the prisoner's failure to comply with the administrative

procedural requirements."  *Id*. (citations and internal quotations omitted).

Whether Plaintiff would be able to adduce any admissible *evidence* of such estoppel or

special circumstances sufficient to create an issue of fact on a motion for summary judgment is

another question, which I need not, and do not, decide here.  I am merely concluding that, based on the current record before the Court, I am unable to agree with Defendants.  Should Defendants choose to file such a motion for summary judgment, they are requested to brief the issue of exhaustion in such a way as to clearly organize the record evidence into groups or categories corresponding with each of Plaintiff's eight claims in this action.  They are also requested to adduce affidavit testimony (if possible) from the Defendants alleged by Plaintiff to have interfered with his grievance process.

For all of these reasons, I reject Defendants' exhaustion argument, and I recommend that the Court deny their motion to dismiss for failure to state a claim to the extent that it is premised on that argument.

**B.    Failure to State a Claim for Inadequate Medical Care**

"Count One" of Plaintiff's Amended Complaint alleges that Defendants Bezirganian, Conway, Trabout, DeBartolo and Niemi violated Plaintiff's rights under the Fifth, Eighth, Nine and Fourteenth Amendments by providing him inadequate medical care, including mental health care, between August of 2005 and June of 2006 at the Tompkins County Jail.  (Dkt. No. 7, "Count One" [Plf.'s Am. Compl.].)

Defendants argue that this claim should be dismissed to the extent that it alleges that Defendants Bezirganian and Conway (who are a psychiatrist and mental health liaison, respectively) provided Plaintiff with inadequate mental health treatment, because Plaintiff has not made "a prior showing of physical injury," as required by the PLRA.  (Dkt. No. 31, Part 3, at 4 [Defs.' Memo. of Law].)  *See* 42 U.S.C. § 1997e(e) ("No Federal Civil Action may be brought by a prisoner confined in a jail, prison or other correctional facility, for mental or emotional

injury suffered while in custody without a prior showing of physical injury.").

Plaintiff responds with two arguments: (1) liberally construed with the special solicitude that should be afforded to the pleading of a *pro se* civil rights litigant, Plaintiff's Amended Complaint does, in fact, allege that, as a result of the misconduct alleged, he suffered a "physical injury," which, according to the case law, must be more than a *de minimis* injury but may be less than a "significant" injury; and (2) in any event, even if Plaintiff's claim fails to comply with the PLRA's physical-injury requirement, Plaintiff would still be permitted to seek nominal and punitive damages on this claim.  (Dkt. No. 37, Plf.'s Opp. Memo. of Law, at 3.)

I believe that Plaintiff's first argument largely lacks merit.  It is true that Plaintiff's Amended Complaint alleges that, as a result of Defendants' actions giving rise to this claim, he suffered, among other things, "physical pain," "neck injuries [and] back injuries."  (Dkt. No. 7, "Count One," ¶¶ 2, 11 [Plf.'s Am. Compl.].)  However, these allegations are rather vague, leaving the reader to wonder what kinds of neck and back injuries, and how long did Plaintiff experience these injuries?  More importantly, even liberally construing this claim with the utmost of special solicitude, one cannot find any factual allegations plausibly suggesting that the alleged physical injuries are sufficiently distinct from Plaintiff's claim of emotional injury to satisfy the PLRA. Rather, Plaintiff has alleged facts plausibly suggesting that the neck and back pain he experienced was merely a physical manifestation of an emotional injury.  (*See* Dkt. No. 7, "Count One," ¶¶ 2, 11 [Plf.'s Am. Compl., alleging that his neck and back injuries were accompanied by "paranoia, depression, anxiety," and the "lingering psychological effects from improper administration of medication, and post-traumatic stress"].)  Numerous courts have held–astutely, I believe–that similar physical manifestations of emotional injuries are not "physical injuries" for

20

purposes of the PLRA.[26]  Simply stated, I believe that two problems exist with regard to Plaintiff's alleged "neck pain" and "back pain": (1) those injuries are so vague that they appear to be *de minimis*; and (2) those injuries, as alleged, appear to be merely an aspect of Plaintiff's alleged emotional injury.

Somewhat more persuasive is Plaintiff's allegation that he experienced "cold sweats, body aches, vomiting, . . . and diarhea [sic]" as a result of his forced withdrawal from what he characterizes as "a very powerful narcotic medication" in August of 2005.  (Dkt. No. 7, "Facts," ¶ 2 [Plf.'s Am. Compl.].)  The problem with this claim is that it alleges facts that plausibly suggest that the physical injuries Plaintiff allegedly experienced in August of 2005 were not caused by any inadequate medical care by Defendants Bezirganian and Conway (or anyone), but rather by the *medical decision* of Defendants DeBartolo and Trabout that Plaintiff should discontinue receiving an extremely strong opiate (Fentanyl), coupled with the symptoms of withdrawal that inevitably accompany the discontinuance of that opiate–especially if one has been taking the

---

[26]        *See, e.g.*, *Davis v. District of Columbia*, 158 F.3d 1342, 1349 (D.C. Cir. 1998) (weight loss, appetite loss, and insomnia caused by emotional distress not "physical injury" for purposes of PLRA); *Cooksey v. Hennessey*, 07-CV-3829, 2007 WL 2790365, at *1 (N.D. Cal. Sept. 20, 2007) ("Physical symptoms that are not sufficiently distinct from a plaintiff's allegations of emotional distress do not qualify as a prior showing of physical injury [for purposes of the PLRA].") [internal quotation marks]; *Brown v. Porter*, 01-CV-20957, 2006 WL 2092032, at *2 (N.D. Cal. July 26, 2006) (migraines, dry mouth, and loss of appetite caused by mental health problems not "physical injury" for purposes of PLRA); *Ashann-Ra v. Virginia*, 112 F. Supp.2d 559, 566 (W.D. Va. 2000) (psychosomatic conditions, including sexual dysfunction, caused by emotional distress not "physical injury" for purposes of PLRA); *McGrath v. Johnson*, 67 F. Supp.2d 499, 508 (E.D. Pa. 1999) (inflamation of pre-existing skin condition caused by emotional trauma not "physical injury" for purposes of PLRA); *Cain v. Virgina*, 982 F. Supp. 1132, 1135 & n.3 (E.D. Va. 1997) (depression and painful headaches caused by emotional distress not "physical injury" for purposes of PLRA); *Pinkston-Bey v. DeTella*, 96-CV-4823, 1997 WL 158343, at *3 (N.D. Ill. March 31, 1997) (severe headaches caused by emotional distress  not "physical injury" for purposes of PLRA).

opiate for *two years*, as Plaintiff allegedly had.  (Dkt. No. 7, "Facts," ¶¶ 2-3 [Plf.'s Am. Compl.].)[27]

However, Plaintiff's second argument possesses merit.  In addition to requesting $750,000 in compensatory damages on this claim, Plaintiff has requested $40,000 in punitive damages on this claim.  (Dkt. No. 7, "Count One," ¶ 11 [Plf.'s Am. Compl.].)  The Second Circuit holds that Section 1997e(e) does not limit the availability of punitive damages for the violation of a constitutional right.  *Thompson v. Carter*, 284 F.3d 411, 418 (2d Cir. 2002) (Pooler, J.) ("Section 1997e(e) does not limit the availability of nominal damages for the violation of a constitutional right or of punitive damages.") [citing cases], *accord*, *Mitchell v. Bell*, 04-CV-1490, 2006 WL 3043126, at *12 (N.D.N.Y. Oct. 23, 2006) (Hurd, J., adopting Report-Recommendation by Di Bianco, M.J.).  As a result, even though his claim for compensatory damages is barred by the PLRA's "physical injury" requirement, his claim for punitive damages is not.

However, a larger problem exists with regard to this claim, which effectively moots the PLRA "physical injury" issue: Plaintiff's inadequate mental-health-treatment claim, and his inadequate-health-care-claim in general, fails to state a claim upon which relief can be granted.

Although Plaintiff casts Count One of his Amended Complaint as a claim arising under "the Fifth, Eighth, Ninth, and Fourteenth Amendments," neither the Ninth or Fourteenth

---

[27]     While this fact in no way affects my reasoning, it is noteworthy that, apparently, Plaintiff was incarcerated during the time in question on a charge of Criminal Sale of a Controlled Substance.  *See* New York State Department of Correctional Services' "Inmate Lookup" Service http://nysdocslookup.docs.state.ny.us/GCA00P00/WIQ1/WINQ000 (last visited Jan. 24, 2008).

Amendments apply:[28] rather, that claim arises merely under either the Fifth or Eighth

Amendment, depending on whether, during the time in question, Plaintiff was a pre-trial detainee

(in which case the Fifth Amendment would apply) or a convicted prisoner (in which case the

Eighth Amendment would apply).[29]   Regardless of whether it arises under the Fifth Amendment

or the Eighth Amendment, a claim for inadequate medical care has two elements: (1) the

existence of a serious medical need; and (2) Defendants' deliberate indifference to that need.  The

"deliberate indifference" element describes a state of mind more blameworthy than *negligence*.[30]

Rather, the "deliberate indifference" element describes a state of mind that is "equivalent to

criminal recklessness."[31]

---

[28]     *See Muniz v. Goord*, 04-CV-0479, 2007 WL 2027912, at *9-10 (N.D.N.Y. July 11, 2007) (McAvoy, J., adopting Report-Recommendation by Lowe, M.J.) (discussing reasons that neither Ninth nor Fourteenth Amendments gave rise to similar claim by prisoner for inadequate medical care).

[29]     (*See* Dkt. No. 7, ¶ 3 [Plf.'s Am. Compl., alleging that Plaintiff was, during the time in question, a "detainee"].)

[30]     *Farmer v. Brennan*, 511 U.S. 825, 835 (1994) ("[D]eliberate indifference [for purposes of an Eighth Amendment claim] describes a state of mind more blameworthy than negligence."); *see also Murphy v. Grabo*, 94-CV-1684, 1998 WL 166840, at *4 (N.D.N.Y. Apr. 9, 1998) (Pooler, J.) ("Deliberate indifference, whether evidenced by [prison] medical staff or by [prison] officials who allegedly disregard the instructions of [prison] medical staff, requires more than negligence.").

[31]     *Hemmings v. Gorczyk*, 134 F.3d 104, 108 (2d Cir. 1998) ("The required state of mind [for a deliberate indifference claim under the Eighth Amendment], equivalent to criminal recklessness, is that the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists; and he must also draw the inference.") [internal quotation marks and citations omitted]; *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996) ("The subjective element requires a state of mind that is the equivalent of criminal recklessness . . . .") [citation omitted]; *cf. Farmer*, 511 U.S. at 827 ("[S]ubjective recklessness as used in the criminal law is a familiar and workable standard that is consistent with the Cruel and Unusual Punishments Clause as interpreted in our cases, and we adopt it as the test for 'deliberate

Here, the non-conclusory allegations contained in Count One of Plaintiff's Amended Complaint alleges facts plausibly suggesting that Defendants Bezirganian, Conway, Trabout, DeBartolo and/or Niemi were, at most, merely *negligent* with regard to Plaintiff's medical care, including his mental health care, between August of 2005 and June of 2006 at the Tompkins County Jail.  (*See* Dkt. No. 7, "Count One" [Plf.'s Am. Compl.].)

This is not because Plaintiff expressly alleges that various Defendants were "negligent" with regard to his medical care.  (Dkt. No. 7, "Facts," ¶¶ 3[c], 14[f] [Plf.'s Am. Compl.]; Dkt. No. 7, "Count One," ¶ 109 [Plf.'s Am. Compl.].)  Out of special solicitude to Plaintiff, I believe that the Court should overlook such inartfully pled allegations.  What the Court cannot overlook is the theory of liability upon which Count One of Plaintiff's Amended Complaint is premised, even when viewed with the utmost of lieniency.

More specifically, Plaintiff clearly hinges his claim of inadequate medical care on a violation of "the standards for delivery of medical care in the State of New York."  (Dkt. No. 7, "Count One," ¶¶ 3, 4, 7, 8, 9 [Plf.'s Am. Compl.]; Dkt. No. 7, "Facts," ¶ 3[k] [Plf.'s Am. Compl.].)  Such a claim is one for medical malpractice, or negligence, and, again, it does not give rise to a violation of either the Fifth or Eighth Amendments.[32]

---

indifference' under the Eighth Amendment.").

[32]    *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.  Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); *see also Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998) ("It is well-established that mere disagreement over the proper treatment does not create a constitutional claim.  So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation.").

Furthermore, it is noteworthy that Plaintiff does not allege that he was altogether deprived of medical care, only that the care was delayed and/or not of his choosing.  Acknowledgments that, during the time period in question, Plaintiff was rather routinely seen by nurses and physicians (including specialists and psychiatrists), and that he was given x-rays, CAT scans and MRIs, pervade Plaintiff's allegations; and disagreements with the medical decisions made by Defendants DeBartolo, Trabout, and Bezerganian plague Plaintiff's allegations.  (*See*, *e.g.*, Dkt. No. 7, "Facts," ¶ 2 [Plf.'s Am. Compl., alleging that he was evaluated by Defendant DeBartolo on 8/23/05, three days after he claims he was in need of such an examination, and that she decided to discontinue his "powerful narcotic medication" and to delay the x-ray examination of his shoulder that he requested]; Dkt. No. 7, "Facts," ¶ 3 [alleging that he was examined by Defendant Trabout on 8/29/05, that Defendant Trabout similarly decided to discontinue Plaintiff's narcotic medication and delayed an x-ray and MRI for more than four months, that Defendant Trabout "disregarded the medical advice of [a] specialist" who had examined Plaintiff's shoulder, that the medical staff was available from only 9:00 a.m. to 6:00 p.m., and that Plaintiff's medication was administered by "random correction's officer's and trainee's [sic]"]; Dkt. No. 7, "Facts," ¶ 5 [alleging that Defendant Bezerganian prescribed Plaintiff a medication in August of 2005 that "caused complications for plaintiff," and that, after Defendant Bezerganian discontinued that medication, he failed to prescribe another medication].)

As for Plaintiff's inadequate-medical-care claim against Defendant Conway, that claim alleges a breach of doctor-patient confidentiality with regard to Plaintiff's "mental health records."  (Dkt. No. 7, "Facts," ¶ 4[b] [complaining that Defendant Conway decided to "pass on" to an unidentified correctional officer Plaintiff's confidential "mental health records," after

25

Plaintiff gave them to her following his complaints of "anxiety and bouts of grandiose [beliefs]"].)  First, this allegation is vague in terms of what records were "pass[ed] on," when they were passed on, to whom they were passed on, and specifically why Plaintiff provided them to Defendant Conway in the first place.  Second, again, this allegation alleges merely a failure to fulfill a duty of care, or negligence, which is not actionable 42 U.S.C. § 1983.  Third, to the extent that Plaintiff's alleged right of confidentiality is premised on a New York State statute,[33] a violation of that right would not give rise to a federal civil rights actions pursuant to 42 U.S.C. § 1983.  *See Madrid v. Mangindin*, No. 95-1418, 1996 U.S. App. LEXIS 12366, at *5-6 & n.1 (10th Cir. May 29, 1996) ("If Mr. Madrid [an inmate] has a claim [for a violation of the therapist-patient privilege], it is under Colorado law.").

Finally, as for Plaintiff's isolated allegations that the alleged mistreatment he experienced was "discriminatory," those allegations are so conclusory as to be frivolous.  (Dkt. No. 7, "Facts," ¶¶ 5[g], 20[j].)  Plaintiff does not allege how he was treated differently than similarly situated individuals, or to what class of individuals he allegedly belonged.  I note that neither prisoners nor the mentally ill comprise a protected class for Equal Protection purposes.  *See Holley v. Carey*, 04-CV-2708, 2007 U.S. Dist. LEXIS 64699, *23 (E.D. Cal. Aug. 31, 2007) ("[N]either prisoners nor persons with mental handicaps are a suspect class[ification] entitled to heightened scrutiny.") [citations omitted]; *Coleman v. Martin*, 363 F. Supp.2d 894, 902 (E.D. Mich. 2005).

When reading Plaintiff's complaints that he did not receive in prison the sort of medical care he would have received outside of prison, I am reminded of what the Second Circuit once

---

[33]     *See, e.g.,* N.Y. C.P.L.R. § 4507 (protecting confidential communications between psychologist and patient).

observed:

> It must be remembered that the State is not constitutionally obligated,
> much as it may be desired by inmates, to construct a perfect plan for
> [medical] care that exceeds what the average reasonable person would
> expect or avail herself of in life outside the prison walls.  [A]
> correctional facility is not a health spa, but a prison in which convicted
> felons are incarcerated.  Common experience indicates that the great
> majority of prisoners would not in freedom or on parole enjoy the
> excellence in [medical] care which plaintiff[] understandably seeks
> . . . .  We are governed by the principle that the objective is not to
> impose upon a state prison a model system of [medical] care beyond
> average needs but to provide the minimum level of [medical] care
> required by the Constitution. . . .  The Constitution does not command
> that inmates be given the kind of medical attention that judges would
> wish to have for themselves . . . .  The essential test is one of medical
> necessity and not one simply of desirability.

*Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986) [internal quotations and citations omitted].

For all of these reasons, I recommend that the Court dismiss Count One of Plaintiff's

Amended Complaint *sua sponte* for failure to state a claim, pursuant to 28 U.S.C. §§

1915(e)(2)(B)(ii) and 1915A(b)(1).  Furthermore, because Plaintiff has already had an

opportunity to amend his pleading in this action, I recommend that the dismissal of Count One be

with prejudice.  In the alternative, I recommend that the Court dismiss Plaintiff's inadequate-

mental-heath-care claim against Bezirganian and Conway to the extent that the claim seeks

compensatory damages, since such a claim is barred by the PLRA's "physical injury" requirement

under the circumstances.

### C.    Failure to State a Claim Against Defendant Bunce

"Count Two" of Plaintiff's Amended Complaint alleges that Defendant Bunce violated

Plaintiff's rights under the First, Fourth, Fifth, Ninth and Fourteenth Amendments by taking the

following actions: (1) delaying Plaintiff's receipt of legal materials in January of 2006, in

27

retaliation against Plaintiff for complaining, in August of 2005, about a loss of $25 in

commissary credit; (2) causing his subordinate correctional officers to physically assault

Plaintiff, without provocation, on or about February 12, 2006, presumably in retaliation against

Plaintiff for the grievance he had filed against Defendant Bunce on February 9, 2006; (3) causing

Plaintiff to be deprived of personal property (including Plaintiff's privileged legal

correspondence, legal discovery, HIV test results, religious materials and personal mail) from

February 14, 2006, to February 20, 2006; (4) causing the Tompkins County Sheriff's Department

to file baseless charges against Plaintiff on February 16, 2006; and (5) during unspecified time

periods, inhibiting Plaintiff from conducting legal work in the law library, or participating in

exercise, by causing him to be handcuffed and shackled without cause.  (Dkt. No. 7, "Count

Two" [Plf.'s Am. Compl.]; Dkt. No. 7, "Facts," ¶ 6 [Plf.'s Am. Compl.].)

     Defendants argue that this claim should be dismissed to the extent that it alleges that

Defendant Bunce violated Plaintiff's constitutional rights by causing Plaintiff to be deprived of

certain legal materials (specifically, copies of case law) for a period of eight days (specifically,

from February 14, 2006, to February 20, 2006), since that claim is not one of constitutional

significance.  (Dkt. No. 31, Part 3, at 4-5 [Defs.' Memo. of Law].)

     Plaintiff does not specifically respond to this argument in his Opposition Memorandum of

Law.  (*See* generally Dkt. No. 37, Plf.'s Opp. Memo. of Law, at 1-5.)

     Under the Local Rules of Practice for this Court, Plaintiff has effectively "consented" to

the granting of that portion of Defendants' motion requesting dismissal of Plaintiff's deprivation-

of-legal-materials claim against Defendant Bunce, since (1) he failed to oppose the motion, (2)

the motion was properly filed, and (3) Defendants have, through the motion, met their burden of

demonstrating entitlement to the relief requested in the motion.  N.D.N.Y. L.R. 7.1(b)(3)

("Where a properly filed motion is unopposed and the Court determines that the moving party

has met its burden to demonstrate entitlement to the relief requested therein, the non-moving

party's failure to file or serve any papers as required by this Rule shall be deemed as consent to

the granting or denial of the motion, as the case may be, unless good cause be shown.")  I note

that an inquiry into whether a movant has met its "burden to demonstrate entitlement" to

dismissal under Local Rule 7.1(b)(3) is a more limited endeavor than a review of a contested

motion to dismiss.[34]  Specifically, under such an analysis, the movant's burden of persuasion is

lightened such that, in order to succeed, his motion need only be "facially meritorious."[35]  Here, I

find that Defendants have met their lightened burden on their unopposed motion.  Moreover, I

am confident that I would reach the same conclusion even if their motion were contested.

> However, again, a larger problem exists with regard to this claim, which effectively

moots the narrow issue raised by Defendants: Plaintiff's claim against Defendant Bunce fails to

state a claim upon which relief can be granted.

---

[34]     *See*, *e.g.*, *Hernandez v. Nash*, 00-CV-1564, 2003 U.S. Dist. LEXIS 16258, at \*7-8 (N.D.N.Y. Sept. 10, 2003) (Sharpe, M.J.) (before an unopposed motion to dismiss may be granted under Local Rule 7.1[b][3], "the court must review the motion to determine whether it is *facially meritorious*") [emphasis added; citations omitted]; *Race Safe Sys. v. Indy Racing League*, 251 F. Supp.2d 1106, 1109-10 (N.D.N.Y. 2003) (Munson, J.) (reviewing whether record contradicted defendant's arguments, and whether record supported plaintiff's claims, in deciding unopposed motion to dismiss, under Local Rule 7.1[b][3]); *see also Wilmer v. Torian*, 96-CV-1269, 1997 U.S. Dist. LEXIS 16345, at \*2 (N.D.N.Y. Aug. 29, 1997) (Hurd, M.J.) (applying prior version of Rule 7.1[b][3], but recommending dismissal because of plaintiff's failure to respond to motion to dismiss *and* the reasons set forth in defendants' motion papers)*, adopted by* 1997 U.S. Dist. LEXIS 16340, at \*2 (N.D.N.Y. Oct. 14, 1997) (Pooler, J.); *accord, Carter v. Superintendent Montello*, 95-CV-0989, 1996 U.S. Dist. LEXIS 15072, at \*3 (N.D.N.Y. Aug. 27, 1996) (Hurd, M.J.), *adopted by* 983 F. Supp. 595 (N.D.N.Y. 1996) (Pooler, J.).

[35]     *See*, *e.g.*, *Hernandez*, 2003 U.S. Dist. LEXIS 1625 at \*8.

Liberally construed, Plaintiff's claim against Defendant Bunce is essentially two-fold: (1) Defendant Bunce personally delayed Plaintiff's receipt of legal materials in January of 2006, in retaliation against Plaintiff for complaining about $25 in lost commissary credit in August of 2005; and (2) after January of 2006, Defendant Bunce caused Plaintiff to experience several forms of adverse action as a result of a grievance filed on February 9, 2006, including (a) an assault at the hands of other correctional officers on or about February 12, 2006, (b) the delayed receipt of certain personal property between February 14, 2006, and February 20, 2006, (c) causing the Tompkins County Sheriff's Department to file baseless charges against Plaintiff on February 16, 2006, and (d) causing Plaintiff to be handcuffed and shackled without cause on unidentified dates.

With regard to Plaintiff's first allegation against Defendant Bunce, Plaintiff fails to allege any facts plausibly suggesting a *causal connection* between the filing of Plaintiff's grievance in August of 2005, and the taking of adverse action against him in January of 2006.  Such a causal connection is a critical element of a retaliation claim,[36] which the Second Circuit has recognized is the type of claim that can easily be fabricated by prisoners (either purposefully or

---

[36]     To prevail on a First Amendment claim under 42 U.S.C. § 1983, a Plaintiff must prove by the preponderance of the evidence that: (1) the speech or conduct at issue was "protected"; (2) the defendants took "adverse action" against the plaintiff–namely, action that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights; and (3) there was a causal connection between the protected speech and the adverse action--in other words, that the protected conduct was a "substantial or motivating factor" in the defendants' decision to take action against the plaintiff.  *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Gill*, 389 F.3d at 380 (citing *Dawes v. Walker*, 239 F.3d 489, 492 [2d. Cir. 2001]).  Under this analysis, adverse action taken for both proper and improper reasons may be upheld if the action would have been taken based on the proper reasons alone.  *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir.1996) [citations omitted].

mistakenly).[37]  Plaintiff does not even attempt to explain the reason for the five-and-a-half month

delay between his alleged protected activity and the adverse action he allegedly experienced.

Moreover, Plaintiff does not even allege facts plausibly suggesting that the grievance that

Plaintiff filed in August of 2005 was filed against Defendant Bunce.  Rather, Plaintiff alleges

facts plausibly suggesting that the loss of the $25 in commissary credit was caused by a Corporal

Shaft, to whom Plaintiff had allegedly entrusted the property on or about July 5, 2005, for the

delivery to another inmate.  (Dkt. No. 7, "Facts," ¶¶ 6, 6[b] [Plf.'s Am. Compl.].)

With regard to Plaintiff's remaining allegations against Defendant Bunce, Plaintiff does

not allege facts plausibly suggesting the *personal involvement* of Defendant Bunce (a supervisory

official) in the various constitutional violations Plaintiff experienced (i.e., the assault, the delayed

receipt of personal property, the filing of baseless criminal charges, and the unjustified

handcuffing and shackling).

A defendant's personal involvement in alleged unlawful conduct is a prerequisite for a

finding of liability in a Section 1983 action.  *Gill v. Mooney*, 824 F.2d 192, 196 (2d Cir. 1987).

Supervisory officials such as prison superintendents are personally involved in a constitutional

violation only if: (1) they directly participated in that violation; (2) they failed to remedy that

violation after learning of it through a report or appeal; (3) they created, or allowed to continue, a

---

[37]      *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001) ("[C]laims of retaliation . . .
involve questions of intent and are therefore easily fabricated. . . . [V]irtually any adverse action
taken against a prisoner by a prison official--even those otherwise not rising to the level of a
constitutional violation--can be characterized as a constitutionally proscribed retaliatory act.")
[citations omitted], *overruled on other grounds*, *Swierkewicz v. Sorema N.A.*, 534 U.S. 506
(2002).  Because of the relative ease with which claims of retaliation can be incanted, the Second
Circuit scrutinizes retaliation claims with particular care.  *See Flaherty v. Coughlin*, 713 F.2d 10,
13 (2d Cir. 1983).

policy or custom under which the violation occurred; (4) they were grossly negligent in managing

subordinates who caused the violation; or (5) they exhibited deliberate indifference to the rights

of inmates by failing to act on information indicating that the violation was occurring.  *Colon v.*

*Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (adding fifth prong); *Wright v. Smith*. 21 F.3d 496,

501 (2d Cir. 1994) (adding fifth prong); *Williams v. Smith*, 781 F.2d 319, 323-324 (2d Cir. 1986)

(setting forth four prongs).

      Here, there was no *direct participation* alleged.  Nor was there a *failure to remedy*

alleged.  Nor was there any *policy or custom* alleged.  Nor was there any poor *management*

alleged.  Nor was there any *deliberate indifference* alleged.  Rather, Plaintiff alleges that

Defendant Bunce (1) *caused* Plaintiff to be attacked by several (unidentified) correctional

officers subordinate to Defendant Bunce, (2) "ordered" that Plaintiff's personal property be seized

and held by (unidentified) correctional officers, (3) "coerced" unidentified correctional officers to

*cause* the Tompkins County Sheriff's Department to file baseless criminal charges against

Plaintiff, and (4) "ordered" (unidentified) correctional officers to handcuff and shackle Plaintiff

without cause on various (unidentified) dates.  (Dkt. No. 7, "Facts," ¶¶ 6[k], 6[l], 6[m], 6[n], 6[p]

[Plf.'s Am. Compl.].)  However, Plaintiff fails to allege any facts plausibly suggesting how

Plaintiff *knew* of Defendant Bunce's alleged coercion and orders (or even when, where, how or to

whom those orders were given).

      It must be remembered that Defendant Bunce is alleged to be a correctional lieutenant and

thus a relatively high-ranking official at the Tompkins County Jail.  Every constitutional

violation that Plaintiff allegedly experienced at Tompkins County Jail in February of 2006 was

allegedly inflicted on Plaintiff by the hand of one of Defendant Bunce's subordinates.  That fact

32

alone is simply not sufficient to personally involve Defendant Bunce in those constitutional

violations for purposes of liability pursuant to 42 U.S.C. § 1983.

For all of these reasons, I recommend that the Court dismiss Count Two of Plaintiff's

Amended Complaint *sua sponte* for failure to state a claim, pursuant to 28 U.S.C. §§

1915(e)(2)(B)(ii) and 1915A(b)(1).  Furthermore, because Plaintiff has already had an

opportunity to amend his pleading in this action, I recommend that the dismissal of Count Two

be with prejudice.  In the alternative, I recommend that the Court dismiss Count Two to the

extent that it alleges that Defendant Bunce violated Plaintiff's constitutional rights by causing

Plaintiff to be deprived of certain legal materials (specifically, copies of case law) for a period of

eight days (specifically, from February 14, 2006, to February 20, 2006).

### D.     Failure to Serve Sean Schollenberg and the John Doe "Shift Supervisor"

On September 29, 2006, Plaintiff filed his original Complaint in this action.  (Dkt. No. 1.)

On December 18, 2006, he filed his Amended Complaint.  (Dkt. No. 7.)  On January 3, 2007,

Chief Judge Mordue ordered Plaintiff to "comply with requests by the Clerk's Office for any

documents that are necessary to maintain this action."  (Dkt. No. 8, at 3.)  Chief Judge Mordue

also ordered Plaintiff to "take reasonable steps to ascertain the identities of any other

individual(s) that purportedly violated plaintiff's civil and/or constitutional rights and, if

appropriate, file a motion to amend his complaint and add such individuals, by name, as

defendants to this lawsuit . . . ."  (*Id*. at 4.)  Moreover, Chief Judge explained the rationale for this

last directive: "The Court notes that plaintiff has asserted claims against two 'John Doe'

defendants in this action.  Plaintiff is advised that the U.S. Marshals cannot effect service on a

'John Doe' defendant.  In the event that plaintiff wishes to pursue this claim against these

defendants, he shall take reasonable steps to ascertain their identities." (*Id*. at 2.)

However, in the year that has followed the issuance of Chief Judge Mordue's directives to Plaintiff, Plaintiff failed to provide the Clerk's Office with a USM-285 form listing Sean Schollenberg's current address, as requested by the Clerk's Office. (Dkt. No. 9 [Letter from Clerk's Office to Plf., requesting return of completed USM-285 forms, sent 1/9/07]; Dkt. No. 25 [Summons Returned Unexecuted, on 4/27/07, because he no longer worked at the Tompkins County Jail].) Similarly, Plaintiff has failed to ascertain the identity of the John Doe Defendant identified by Plaintiff as the "Shift Supervisor," sufficient to enable the Marshal to serve that individual with process. (*See generally* Docket.)

Because Plaintiff has failed to provide the Clerk's Office with documents necessary to enable the Marshals Service to effect service on Sean Schollenberg and the John Doe Defendant identified as the "Shift Supervisor," and because Plaintiff has failed to show "good cause" for that failure, Plaintiff has violated Fed. R. Civ. P. 4(m). Alternatively, Plaintiff has violated Fed. R. Civ. P. 16(f) due to the fact that he has failed to comply with the directives of Chief Judge Mordue in his Order of January 3, 2007.

As a result, I recommend that the Court dismiss Plaintiff's claims against Sean Schollenberg and the John Doe Defendant identified as the "Shift Supervisor." I note that the Court need not issue such an order only upon motion of defense counsel but may do so *sua sponte*. *See* Fed. R. Civ. 4(m) ("[T]he Court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time."); Fed. R. Civ. 16(f) ("[T]he judge, upon motion or the judge's own initiative, may make such orders with regard thereto as are just . . . .").

34

**ACCORDINGLY**, it is

**RECOMMENDED** that Counts One and Two of Plaintiff's Amended Complaint (Dkt. No. 7) be *sua sponte* **<u>DISMISSED</u> with prejudice** for failure to state a claim upon which relief might be granted, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1); and that, **in the alternative**, portions of those two Counts be dismissed pursuant to the **partial <u>GRANTING</u>** of Defendants' motion to dismiss for failure to state a claim (Dkt. No. 31), as described above in Parts II.B. and II.C. of this Report-Recommendation, but that Defendants' motion to dismiss for failure to state a claim be **otherwise <u>DENIED</u>**; and it is further

**RECOMMENDED** that Plaintiff's claims against Sean Schollenberg and the John Doe Defendant identified as the "Shift Supervisor" be *sua sponte* **<u>DISMISSED</u>** for failure to serve and/or failure to comply with an Order of the Court, pursuant to Fed. R. Civ. 4(m) and/or Fed. R. Civ. 16(f).

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Svcs.*, 892 F.2d 15 [2d Cir. 1989]); 28 U.S.C. § 636(b); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: January 28, 2008
       Syracuse, New York

George H. Lowe
United States Magistrate Judge

35