UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

MALIK AZ'REAL MOSBY,                    )
                                        )
        Plaintiff,                      ) Civil Action No. 9:06-CV-01165-
                                        )JMH
v.                                      )
                                        )
MARSHALL TRABOUT, et al.,               )
                                        )
        Defendants.                     )        **DECISION & ORDER**

** ** ** ** **

HOOD, J.

        This action brought pursuant to 42 U.S.C. § 1983 is before the
Court on a motion for summary judgment brought Defendants Dr.
Bezirganian, Debra Niemi, Michael Searles, Joanne Conway, Debra
DeBartolo, John Doe ,a/k/a Officer Haines, Brendan Fairbanks, Harry
Hawk, Darwin Smith, Sgt. Walpole, Sgt. DaMatteo, Sgt. Masters and
Lieutenant Ray Bunce ("the County Defendants".)[1]   Plaintiff has
filed a response in opposition thereto.

        The complaint contains eight counts alleging violations of
Plaintiff's constitutional rights while he was an inmate at the
Tompkins County Jail from August 20, 2005 to June 2, 2006.   The
facts pertaining to each will be outlined below.

_____

        [1] Another Defendant, Marshall Trabout, M.D., has not joined
in the motion *sub judice.*  Although Dr. Trabout is in default, no
entry of default has been made. (Dkt. No. 75).  Nothing said in
this Opinion and Order addresses Plaintiff's claims against this
Defendant.

**Count 1**

In Count 1, Plaintiff alleges he received inadequate medical care and inadequate mental health treatment from Dr. Bezirganian, Niemi, DiBartolo, Conway and Dr. Trabout. He has exhausted his administrative remedies on this issue. (Dkt. No. 61, Niemi Aff. ¶7).

With regard to the alleged inadequate mental health treatment, Plaintiff claims to have suffered from anxiety, paranoia and depression. The alleged mental health problems did not result from any physical injury. Indeed, Plaintiff does not allege that he suffered a physical injury that gave rise to the alleged psychological issues.

It is undisputed that Plaintiff was treated by medical and mental health professionals at the Jail and outside the Jail on a regular basis. He was examined or treated by medical staff at the Jail on at least nineteen occasions. In addition he was referred to other medical health professionals for examinations and treatment, including x-rays and MRIs.

Plaintiff does not allege that the defendants acted with deliberate indifference to a serious medical need, nor does he articulate any facts that can be so construed. He merely alleges negligence (defendants failed to meet "the standards for delivery of medical care in the State."). But there are no facts that would

even suggest negligence, only Plaintiff's disagreement with medical decisions.

Plaintiff's main objection to his medical treatment is that mental health professionals refused to prescribe drugs for him which he desired. However, he was examined by the medical staff on numerous occasions and they determined that the requested drugs were not indicated. Plaintiff simply disagrees with their determination.

Plaintiff also claims that he was denied adequate medical care because he was required to withdraw from a "very powerful narcotic medication." Indeed, he was examined by the nurse and, after reviewing his condition and consulting with the Doctor, they determined that Mr. Mosby should not take that drug. Plaintiff just disagrees with the decision.

Finally, Plaintiff complains of a failure to received timely x-rays or MRIs. In fact, it is indisputable that Plaintiff was seen by medical health professionals who simply determined that such tests were not needed at the time Plaintiff desired them.

### Count 2

Count 2 alleges that defendant Lt. Raymond Bunce deprived Plaintiff of personal property and engaged in retaliatory acts of harassment. Specifically, Plaintiff alleges that in August 2005 Plaintiff complained about the handling of twenty-five dollars in the Commissary by Lt. Bunce and that in January of 2006 Lt. Bunce

3

began to retaliate.

Plaintiff filed one grievance relating to the allegations in Count 2. He filed Grievance No. 477 which alleged that on one occasion it took seven days (from February 14, 2006 to February 20, 2006) for him to get legal materials which were not housed in the Jail when typically it takes less time. Although that grievance was not timely, the Jail agreed that prisoners should receive legal materials in a shorter period of time and amended the procedures for receiving materials not available in the Jail in order to ensure the more timely receipt of materials by inmates. In effect, Plaintiff was successful on the grievance.

Plaintiff alleges that Lt. Bunce interfered with Plaintiff's grievances. Plaintiff specifically alleges that Lt. Bunce deemed one or more grievances untimely. Plaintiff is apparently referring to the grievance on the legal materials which Lt. Bunce determined was untimely. Nevertheless, despite its purported untimeliness, the Jail acknowledged the problem and took action to improve the delivery of materials to inmates.

With regard to that particular incident, the delay was not caused by Lt. Bunce withholding materials. Rather, Lt. Bruce turned over the materials to Plaintiff as soon as he received them from outside the Jail. The delay was the result of procedures which were subsequently improved to ensure more timely receipt of materials. (Dkt. No. 61, Bunce Aff. ¶¶ 4 and 5).

As part of the supposed retaliation Plaintiff also alleged that Lt. Bunce caused Plaintiff to be assaulted by other officers who also allegedly seized Plaintiff's property at the time. Plaintiff was, in fact, involved in an incident on February 6, 2006. On that date he attacked a Corrections Officer and was restrained by other Corrections Officers (see discussion on Count 4). Lt. Bunce claims he had no involvement with that incident. (Dkt. No. 61, Bunce Aff. ¶ 6).

Plaintiff also alleges that on or about February 14, 2006, Lt. Bunce ordered the seizure of his personal effects and that, as a result, he was deprived of those personal effects for six days. In fact, on that date, other officers determined that Plaintiff had excessive materials in his cell and, according to well established prison rules, put the excess materials in a property locker. Lt. Bunce purportedly was not involved in that incident either. (Dkt. No. 61, Bunce Aff. ¶ 7).

### Count 3

Count 3 makes allegations against John Doe, a shift supervisor. As per this Court's order of July 7, 2008, that claim has been dismissed because Plaintiff has neither identified John Doe or taken reasonable steps to ascertain his identity. (Dkt. No. 47).

5

### Count 4

Count 4 alleges that Plaintiff was assaulted by defendants Hawk, Searles, Smith, Schollenberger and DaMatteo on February 6, 2006. Plaintiff initially filed Grievance 494 alleging excessive force. However, after the initial grievance was returned to him as denied, he did not pursue the grievance. Thus, he did not exhaust his administrative remedies on the grievance. In fact, in a subsequent State lawsuit by Plaintiff the State Supreme Court determined that Plaintiff did not exhaust its administrative remedies with regard to this grievance.

### Count 5

Count 5 alleges that defendant Sgt. Walpole was "responsible in his supervisory capacity" for several actions against Plaintiff. In one part of the complaint, Plaintiff alleges that Sgt. Walpole was responsible for the alleged attack on Plaintiff on February 12, 2006. (Am. Compl. at 29). In another part of the Complaint it is alleged that Walpole was responsible for an alleged attack on Plaintiff on February 12, 2005. (*Id.* at 16). Plaintiff never filed a grievance on these allegations against Sgt. Walpole.

Plaintiff was involved in an incident on February 6, 2006. Sgt. Walpole claims he was not personally involved in the alleged use of excessive force on February 6. He did not assist the officer who was attacked, nor did he restrain Plaintiff. Sgt. Walpole was not involved in any incident with Plaintiff on February

6

12 of any year. (Dkt. No. 61, Walpole Aff. ¶ 1).  Indeed, Plaintiff does not claim that he was directly involved in the alleged unconstitutional activity.

Mr. Mosby also alleges that after the incident Sgt. Walpole refused to allow his injuries to be photographed.  However, on February 6, Sgt. Walpole contends he personally escorted the Jail Nurse into Mr. Mosby's cell so that Plaintiff could be examined. The Nurse found no injuries..  Also, the Jail Physician examined Plaintiff the same day and he too determined that Plaintiff suffered no injuries. (Dkt. No. 61, Walpole Aff. ¶ 2) Sgt. Walpole is not aware of any incident on February 12. (Dkt. No. 61, Walpole Aff. ¶ 1).

Plaintiff further alleges that Sgt. Walpole was responsible for depriving Plaintiff of his property for six days.  Sgt. Walpole disclaims ordering the seizure of any materials.  In fact, while Mr. Mosby was in administrative segregation pending the hearing on the charges he was entitled to hold a more limited amount of materials than he could keep in his cell.  As Mr. Mosby confirms in the documents attached to the complaint, all the materials were preserved and returned to him within six days.

Mr. Mosby also alleges that Sgt. Walpole ordered that he be moved to a holding cell where, Mr. Mosby alleges, he was subject to further assault.  Mr. Mosby was moved to the holding cell pending the hearing, but he was not subject to any assault.  Sgt. Walpole

7

denies involvement in any such assault. (Dkt. No. 61, Walpole Aff. ¶ 3). Indeed, inmate Mosby does not claim that Sgt. Walpole was directly involved in any such assault.

### Count 6

Count 6 alleges that Sgts. DeMatteo and Walpole deprived Plaintiff of a fair hearing on the charges relating to his assault of a Corrections Officer. Plaintiff filed Grievance No. 495 on these matters but he did not follow through after the initial denial. (Dkt. No. 61, Niemi Aff. ¶ 9). In a prior lawsuit against the Jail, the Supreme Court of the State of New York determined that Mr. Mosby failed to exhaust his administrative remedies with regard to this grievance.

Mr. Mosby also failed to exhaust his administrative remedies by not appealing the decision of the hearing panel. He was informed in writing of his right to appeal the hearing panel's decision. Indeed, Plaintiff signed a statement of his rights before the hearing, which specifically informs him of his right to appeal the panel's determination. Yet, he did not appeal the panel's determination.

The evidence received at the hearing is detailed in the affidavit of Sgt. Matthew DeMatteo and the Disciplinary Hearing form and the numerous sworn statements attached to the DeMatteo affidavit. (Dkt. No. 61, DeMatteo Aff.).

In his complaint Plaintiff asserts certain specific complaints about the proceedings. Specifically, he claims he was denied the right to call witnesses. But that does not appear to be true. Mr. Mosby testified himself. He also asked inmate Flowers to testify on his behalf and Mr. Flowers did, in fact, testify. However, the testimony was not helpful to Mr. Mosby because Mr. Flowers testified that he had only blurry visions of the incident in the reflections of a television screen and that the could not say what happened. Mr. Mosby also asked that inmate Cochran testify on his behalf. Mr. Cochran was boarded out at another Jail. He was contacted by the disciplinary hearing panel and he told the panel that he did not wish to participate and had no testimony that was favorable to Mr. Mosby. Mr. Mosby did not identify any other potential witnesses. Also, in response to an Interrogatory in this action, Mr. Mosby admits that, even now, he cannot identify any other witnesses. (Dkt. No. 61, DeMatteo Aff. ¶ 7).

Mr. Mosby also alleges that Sgt. DeMatteo deprived him of a fair hearing because he said "I believe you did hit, punch or did something to the Officers" before the hearing began. Sgt. DeMatteo denies making such a statement. Also, the evidence at the hearing, as set forth in the DeMatteo affidavit and the accompanying exhibits, demonstrate that the evidence against Plaintiff was overwhelming and uncontradicted. Indeed, although Mr. Mosby

9

testified, he chose not to testify about the specifics of the incident but rather to use the opportunity to articulate his general displeasure with the Jail. (Dkt. No. 61, DeMatteo Aff. ¶ 8).

Finally, Mr. Mosby alleges that he was deprived of a fair hearing because Sgt. Masters commenced the hearing by saying to Plaintiff "ugh, let's see a good word you ugh anal." It is unclear what such a statement means or how it could possibly have lead to the denial of Plaintiff's due process rights. (Dkt. No. 61, DeMatteo Aff. ¶ 9).

### Count 7

Count 7 alleges that defendant Corrections Officer Brenda Fairbanks destroyed Plaintiff's personal property when Plaintiff was transferred from the County Jail to a State Facility (in Elmira). No grievance was pursued concerning the facts alleged in this count.

In fact, no property of Plaintiff was destroyed.  Under New York State Department of Correction rules an inmate cannot take all the property he wishes when transferred to a State facility. Accordingly, some of Plaintiff's property had to be held by the County Jail.  That property was later released to a local agency (Offender Aide and Restoration) at the written direction of Mr. Mosby.  (Dkt. No. 61, Fairchild Aff. ¶¶ 2 and 3). Inmate Mosby brought a lawsuit claiming that he did not receive the property and

a New York State Supreme Court found that the property was returned to the local agency at Mr. Mosby's written direction.  (Dkt. No. 61, Fairchild Aff. ¶4).

### Count 8

Count 8 alleges that Chief Debra Niemi was generally responsible for all of the alleged violations.  There was no grievance filed against Chief Niemi for her alleged role in these matters.  The complaint does not allege that Chief Niemi was personally involved in any of the alleged constitutional violations. It merely alleges that she did not provide Plaintiff with a remedy for those violations.

As Niemi's affidavit indicates, there were numerous avenues available to Plaintiff to address his concerns including the formal and informal grievance process and Inmate Request Forms.  Also, Plaintiff was provided with a hearing on the charges against him related to the attack on the Corrections Officer.  Plaintiff took advantage of all of these procedures provided by the Jail.  However, he apparently disagrees with the determinations on his grievances and the conclusion of the hearing panel.

The count also alleges that Chief Niemi failed to disband a policy that allows random corrections officers access to inmate medical distribution information.  It is not clear what changes Plaintiff believes should be made to the policy.  The complaint does not allege that Niemi was in any way directly involved in the

improper distribution of any drug to Plaintiff or any other inmate.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. Pro. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986).  In reviewing a motion for summary judgment, this Court must determine whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.  Furthermore, the evidence and all facts must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

### Administrative Remedies

The Prison Litigation Reform Act provides that "no action shall be brought with respect to prison conditions under Section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a).  In *Booth v. Churner,* 532 U.S. 731 (2001), the

United States Supreme Court held that failure of a prisoner to exhaust administrative remedies through the grievance process available in a jail necessitates the dismissal of the prisoner's complaint.  Furthermore, in *Porter v. Nussle*, 534 U.S. 516 (2002), the Supreme Court again dismissed a prisoner's complaint because the prisoner failed to exhaust the grievance proceedings provided by the prison.

Here, Plaintiff has failed to exhaust his administrative remedies for all but the claim that he suffered from inadequate mental health treatment prior to January 28, 2006 (part of Count 1) and the claim that he did not receive requested case law from Lt. Bunce in a timely manner (part of Count 2, see Complaint pg 10). He simply did not pursue his other grievances to completion.

Plaintiff alleges in a very general manner that Niemi or Bunce interfered with his grievances. He states that Bunce deemed a grievance untimely.  However, neither of these individuals took his grievances. Indeed, Niemi, as Chief of the Jail, met with Plaintiff and explained to him how he needed to proceed to preserve his claims.  He just did not follow through.  With regard to deeming grievances untimely, Bunce noted that Plaintiff's grievance regarding the delay in receiving legal materials was untimely, but Plaintiff was successful on that grievance despite its tardiness.

Also, with regard to Counts 4 and 6, Plaintiff failed to exhaust another administrative remedy.  He had a right to appeal

the determination of the hearing panel regarding the assault on February 6, 2006.  Although he acknowledged his right to appeal in writing, Plaintiff did not appeal.

In sum, all claims not related to Mental Health treatment and the late receipt of legal case law must be dismissed because Plaintiff did not exhaust his administrative remedies.

### Collateral Estoppel

The doctrine of collateral estoppel bars re-litigation of factual issues that have been determined in a prior proceeding where "(1) The issues in both proceedings are identical; (2) the issue in the prior proceeding was actually litigated and actually decided; (3) there was a full and fair opportunity to litigate in a prior proceeding, and (4) the issue previously litigated was necessary to support a valid and final judgment on the merits." *Grieve v. Tamerin*, 269 F.3d 149 (2nd Cir. 2001).  Furthermore, under the *Rooker-Feldman* doctrine, a federal district court does not even have subject matter jurisdiction to entertain a claim that effectively seeks judicial review of a State Court decision. *Rooker v. Fidelity Trust Company*, 263 U.S. 413, 44 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Phifer v. City of New York*, 289 F.3d 49, 55 (2nd Cir. 2002).

In this case, a State Supreme Court has already determined that Plaintiff failed to exhaust his administrative remedies on the remaining grievances including Grievance No. 494 (excessive force)

14

and 495 and 496 (defective grievance procedures) (Counts 4 and 6).
As all the requirements of collateral estoppel are satisfied,
Plaintiff is barred, as a matter of law, from re-litigating the
subject of those grievances.  In the State Supreme Court case the
County requested the dismissal of Plaintiff's challenge to these
grievances on the ground that he failed to exhaust his
administrative remedies and submitted supporting papers and
documentation.  Plaintiff responded in opposition.  However, the
State Supreme Court determined that Plaintiff had failed to exhaust
his administrative remedies and dismissed the claims.  Thus, even
if Plaintiff did have any factual basis for these claims,
collateral estoppel bars him from again raising the claims.

### Prison Litigation Reform Act

The Prison Litigation Reform Act states that, "no Federal
Civil Action may be brought by a prisoner confined in a jail,
prison or other correctional facility, for mental or emotional
injury suffered while in custody without a prior showing of
physical injury." 42 U.S.C.§1997e(e).  In other words, a prisoner
cannot claim emotional injuries without accompanying prior physical
injury.

Dr. Bezirganian and Conway are mental health professionals.
They provide mental health treatment only.  Plaintiff alleges that
Dr. Bezirganian failed to meet Plaintiff and provide appropriate
"mental health treatment." (Complaint pg. 9).  Plaintiff alleges

that Conway (a forensic counselor working in the Tompkins County Mental Health Department) also failed to provide him with adequate mental health treatment.  (Complaint pg. 8).  However, there is no accompanying prior physical injury.  Indeed, Plaintiff does not allege or contend that he suffered a prior physical injury.  This is exactly the type of claim that the Prison Litigation Reform Act prohibits.  *Thomas v. Carter*, 284 F.3d 411, 417 (2nd Cir. 2002). Accordingly, the claim for inadequate mental health treatment (Count 1) against Dr. Bezirganian and Joanne Conway must fail and the claim may be dismissed on this basis alone.

**Failure to State a Constitutional Claim**

In order to succeed on a claim for inadequate medical care, Plaintiff must prove that Defendants acted with deliberate indifference to a serious medical need.  *Farmer v. Brennan*, 511 U.S. 825 (1994). It must be shown that Defendants acted with a state of mind equivalent to criminal recklessness.  *Hemmings v. Gorczyk*, 134 F.3d 104, 108 (2nd Cir. 1998).

In this case there is no evidence suggesting deliberate indifference to Plaintiff's serious medical needs.  Indeed, as the affidavits of the Jail Chief, the Jail Nurse and the Mental Health Liaison unequivocally demonstrate, Plaintiff was treated regularly for a variety of alleged maladies.  He does not even claim that he was not treated regularly by the Jail medical staff.  He simply disagrees with several medical decisions made by the medical staff.

16

For example, Plaintiff believes that he should have received drugs which the medical staff, after examining him and reviewing his symptoms and history, determined were not indicated.  Although he received both x-rays and MRIs, Plaintiff alleges that there were additional times that he should of gotten such tests.  But the Jail medical staff examined Plaintiff repeatedly and determined the tests were not necessary.  In short, Plaintiff just disagrees with certain medical decisions of the Jail medical staff.  There is nothing in the facts suggesting deliberate indifference to his serious medical needs.

Plaintiff does not even allege deliberate indifference to his medical needs.  He alleges merely that the defendants failed to live up to "the standards for delivery of medical care in the State of New York."  (Compl. Count 1 ¶ 3).  This is merely a claim in negligence; negligence is not actionable in a Section 1983 action.

In sum, there are no facts, and no allegations, that any medical health professional engaged in any activity which violated Plaintiff's constitutional rights.  The Defendants are entitled to judgment on this basis too.

## Count 2

There is only one claim in Count 2 which Plaintiff pursued through completion of the grievance process.  That is a claim that defendant Bunce deprived Plaintiff of case law.  Defendants consider Plaintiff to have exhausted his administrative remedies on

17

this claim only because he was successful in obtaining requested relief. Specifically, Plaintiff claims that requested case law was received several days later than cases were typically received by Plaintiff, although the cases were received in less than eight days. That is hardly a claim of constitutional significance. *See Ingraham v. Wright*, 430 U.S. 651, 674 (1977) ("There is, of course, a *de minimis* level of imposition with which the constitution is not concerned."). Here, Plaintiff simply does not allege any facts that would amount to a violation of the constitution. Furthermore, there is no showing that Plaintiff suffered any adverse consequences such as dismissal of a pending action due to the delay in obtaining case law.

Plaintiff also alleges that Bunce was responsible for various actions of other Corrections Officers. Plaintiff alleges that he was to be attacked by other correction officers, that other officers filed baseless charges against him, and that his personal property was seized. However, no where does he charge that Bunce was personally involved in any of these activities. As Bunce was not personally involved in these activities, he has no liability under Section 1983 and the claims must be dismissed. *Ashcroft v. Igbal*, – U.S.–, 129 S.Ct. 1937, 1948 (2009); *Gill v. Mooney*, 824 F.2d 192, 196 (2nd Cir. 1987).

Furthermore, Plaintiff alleges that all of these alleged unconstitutional activities were in retaliation for an incident

occurring five and a half months earlier during which he allegedly complained about the use of $25 in the Commissary.  There is no rational connection between any of these events (which did not actually involve Bunce) and Plaintiff's alleged complaint five and a half months earlier.  Indeed, as stated in his affidavit, Bunce does not believe that Plaintiff filed any grievance or complaint regarding the Commissary.  In any event, there is no basis in law, fact or logic to attribute the alleged activities of Corrections Officers to Plaintiff's dissatisfaction with the Commissary almost six months earlier. *Iqbal*, 129 S.Ct. at 1949-50.

### Count 4

Count 4 of the Complaint Alleges that Defendants Hawk, Smith and Searles Assaulted Plaintiff.  Plaintiff's allegation is conclusory and contradicted by the numerous affidavits of the officers involved.  Those affidavits clearly established that Plaintiff attacked Corrections Officer Hawk and was subdued by other officers without suffering any injury whatsoever.

A complaint by a prisoner that prison guards used excessive force is treated as an Eighth Amendment claim for cruel and unusual punishment.  The law is well established as to when a prisoner can state such a claim. As the Supreme Court explained in *Hudson v. McMillan*, 503 U.S. 1 (1992) every malevolent touch by a prison guard does not give rise to a constitutional cause of action.  Only cases in which prison officials maliciously and

19

sadistically use force to cause harm violate the Eighth Amendment. In contrast, good faith efforts to maintain discipline do not give rise to any claim.

When a Plaintiff suffers more than *de minimis* injury in the course of a scuffle with prison guards, the degree of injury is a factor that the Court should consider in determining whether the prison officials acted maliciously and sadistically. *Id; Romana v. Howarth*, 998 F.2d 101 (2nd Cir. 1993) However, an inmate must have more than *de minimis* injury to have any claim under the Eighth Amendment for cruel and unusual punishment. *Norman v. Taylor*, 25 F.3d 1259 (4th Cir. 1994); *Gomez v. Chandler*, 163 F.3d 921 (5th Cir. 1999).

In this case, the defendants were simply trying to maintain order by preventing an assault by Plaintiff.  There is no evidence whatsoever suggesting that defendants acted maliciously or sadistically.  Indeed, Plaintiff was found guilty of attacking a corrections officer in an administrative hearing. The evidence against Plaintiff was overwhelming and Plaintiff did not appeal the determination.

The fact that Plaintiff suffered no physical injury whatsoever, as confirmed by examinations by both the Jail Physician and the Jail Nurse that very day, confirm that the defendants did not act with sadistic or malicious intent.  Furthermore, as Plaintiff did not suffer more than *de minimis* injuries, he has no

cause of action under the Eighth Amendment even if he had exhausted his administrative remedies.

### Count 5

Count 5 alleges that Defendant Walpole "in his supervisory capacity" failed to protect Plaintiff from assault by a different officer and, "while acting in the capacity of shift supervisor" he seized certain materials of Plaintiff.

The complaint against Walpole is, like many allegations against Bunce, based on his supervisory capacity.  Walpole was not directly involved in any of these alleged actions, as stated in his affidavit, a statement not refuted by Plaintiff.  Hence, he is not subject to liability under Section 1983.  *Iqbal*, 129 S.Ct. at 1949-50.

Also, the claim by Plaintiff that he was deprived of legal materials, apparently for a six day period, does not rise to a constitutional violation.  Indeed, Plaintiff's own documentation demonstrate that the materials were preserved for him and returned to him within a week.

### Count 6

In Count 6, Plaintiff claims to have been denied a fair hearing because he was denied the right to call witnesses and because two members of the hearing panel allegedly made prejudicial statements.  There are several problems with this claim.

First, in addition to failing to exhaust his administrative remedies on a grievance related to this matter, Plaintiff failed to appeal the determination of the hearing panel.  Indeed, Plaintiff was advised of his right to appeal and he signed a written acknowledgement of his appeal rights.  Yet he did not appeal. Accordingly, the Prison Litigation Reform Act bars this action, not only for failure to pursue the grievance, but also for failure to appeal the determination of the hearing panel.

Second, Plaintiff's main complaint with the hearing panel was that he was not allowed to call witnesses.  However, the uncontradicted facts show this allegation to be false.  Plaintiff testified himself. He also called another inmate as a witness. That inmate also testified.  Plaintiff identified a third potential witness, but that witness was boarded out.  Nevertheless, that prisoner was contacted by the hearing panel and he told the panel that he did not wish to testify and that he had no evidence that would be beneficial to Mr. Mosby.  Finally, even many years later, in a response to discovery in this matter, Mr. Mosby was unable to identify any other potential witnesses.  Hence, Mr. Mosby's claim that he was deprived of the right to call witnesses is simply contrary to the undisputed facts.

Plaintiff also claims that he was denied due process because Sgt. Masters and Sgt. DeMatteo each made a prejudicial remark. Plaintiff's claim regarding alleged prejudicial statements does not

give Plaintiff a cause of action.  The statement attributed to Sgt. Masters - "ugh, let's see a good word you ugh, anal" - was not, in fact, said.  Furthermore, it is meaningless language not suggesting any prejudice whatsoever.

Plaintiff's allegation that Sgt. DeMatteo said that he believed Plaintiff "did something to the officers" also does not give rise to a constitutional claim.  Sgt. DeMatteo did not, in fact, say this.  Furthermore, the contention is really irrelevant, as Plaintiff was found guilty by a panel of three upon overwhelming evidence of his guilt.  Numerous witnesses gave evidence of Plaintiff's guilt on the charges.  There were no witnesses or evidence to the contrary.  Even Plaintiff, who testified at the hearing, did not dispute the sworn statements of the Corrections Officers.

In sum, a panel of Corrections Officers heard evidence regarding Plaintiff's activities.  There was overwhelming evidence of Plaintiff's guilt and none suggesting Plaintiff was innocent. The panel found him guilty of nine of eleven disciplinary charges. Given the evidence before it, it is inconceivable that the panel could have found Plaintiff innocent of the most serious charges.

## Count 7

Plaintiff alleges that Defendant Fairbanks destroyed his property when he was transferred to State Prison.  However, that claim must fail for several reasons.  First, no property was

destroyed.  The State did not allow Inmate Mosby to take all his materials, so the County had to keep some of his possessions.  As the affidavits of Niemi and Fairbanks make clear, that property was preserved and turned over to a local agency at the written direction of Mr. Mosby.

Second, the claim is barred by collateral estoppel and the *Rooker-Feldman* doctrine, as a State Court already has determined that these materials were returned by the Jail in accordance with the written directions of plaintiff.

### Count 8

Count 8 alleges that Niemi participated in the alleged constitutional violations referred to in Counts 1 through 7. However, there are no facts or allegations which indicate that the Chief actually participated in any of the events.  Furthermore, as previously discussed, none of them constituted constitutional violations.

Plaintiff contends that Niemi participated by failing to provide a remedy for the alleged constitutional violations. However, it is undisputed that the Chief provided a grievance process, a complaint process (Inmate Request Form) and a hearing process for inmates charged with violations.  It is further undisputed that Plaintiff participated in all those processes.  He was simply not as successful as he wished to be.

Plaintiff also asserts that Niemi ignored his complaints

regarding inadequate medical and mental health treatment. However, it is undisputable that Mr. Mosby received significant treatment from numerous health care professionals. As stated in her affidavit, Niemi believes that Plaintiff received excellent medical care.

Plaintiff also alleges that Niemi failed to disband a policy regarding correction officers distributing medications, although there are no facts suggesting that the policy is deficient. Furthermore, as Niemi states in her affidavit, she believes that the system works very well and has worked well for many years.

Finally, Plaintiff alleges that Niemi did not ensure that he received materials that were allegedly wrongfully seized. However, as discussed above, no materials were ever wrongfully seized. Furthermore, Niemi actually made special efforts to ensure that Plaintiff's property was properly handled. (See Niemi Aff. ¶4 and State Court decision, Exhibit A to Niemi Affidavit).

In sum, Niemi can not be held accountable for any of the alleged constitutional deprivations because she had no personal involvement. *Iqbal*, 129 S.Ct. at 1948. Second, no constitutional violations occurred.

### Conclusion

Accordingly, **IT IS ORDERED** that Defendants' motion for summary judgment be, and the same hereby is, **GRANTED.**

This the 11th day of February, 2010.



Signed By:

_**Joseph M. Hood**_

**Senior U.S. District Judge**

Sitting by Designation