UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MALIK AZ'RAEL MOSBY,

          Plaintiff,
                   9:06-CV-1165
v.                  (NAM/TWD)

MARSHALL TRABOUT,

          Defendant.
_____

APPEARANCES:            OF COUNSEL:

MALIK AZ'RAEL MOSBY, 06-B-1604
Plaintiff pro se
Livingston Correctional Facility
P.O. Box 91
Sonyea, NY 14556

HARRIS BEACH PLLC         RUSSELL E. MAINES, ESQ.
Attorneys for Defendant
119 East Seneca Street
Ithaca, NY 14851

TOMPKINS COUNTY ATTORNEY'S OFFICE  JONATHAN WOOD, ESQ.
Attorneys for County Defendants
125 East Court Street
Tompkins County Office Building
Ithaca, NY 14850

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

# REPORT-RECOMMENDATION

   This pro se prisoner civil rights action, commenced pursuant to 42 U.S.C. § 1983, has

been referred to me for Report and Recommendation by the Honorable Norman A. Mordue,

Senior United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c).

Plaintiff Malik Az'Rael Mosby alleges that his constitutional rights were violated while he was an inmate at the Tompkins County Jail. Currently pending before the Court are Plaintiff's motion to obtain discovery (Dkt. No. 139), Defendant Trabout's motion for summary judgment (Dkt. No. 130), and Plaintiff's motion to vacate an earlier order granting summary judgment for Defendant Bezerganian (Dkt. No. 161). For the reasons that follow, I recommend that the Court deny Plaintiff's motion to obtain discovery, grant Defendant's motion for summary judgment, and deny Plaintiff's motion to vacate.

I. **FACTUAL AND PROCEDURAL SUMMARY**

Plaintiff, now an inmate of the New York Department of Corrections and Community Supervision ("DOCCS"), was housed at the Tompkins County Jail in 2005 and 2006. (Dkt. No. 7 at 2.) Plaintiff suffered from mental health issues and a right shoulder injury that predated his incarceration. (Dkt. No. 7 at 4; Dkt. No. 161 at 24-35.)

In the first count of his eight-count complaint, Plaintiff alleges that he received constitutionally inadequate medical care and mental health treatment from Defendant Dr. Marshall Trabout at the jail. (Dkt. No. 7 at 22-25; Dkt. No. 81 at 2.) Specifically, Plaintiff alleges that Defendant Trabout failed to authorize x-rays and an MRI of his right shoulder, failed to prescribe pain medication, disregarded the advice of a specialist regarding Plaintiff's shoulder, failed to monitor lesions via CAT scans, and failed to properly treat Plaintiff after an alleged use of force by correction officers. (Dkt. No. 7 at 6-8.)

Defendant Trabout declares that Plaintiff was treated or examined approximately nineteen times while at the jail. (Dkt. No. 131-3 ¶ 3.) Defendant Trabout declares that he did not order x-rays or MRIs because he "did not feel the patient needed the studies based on [his] clinical

evaluation and judgment." *Id.* ¶ 5. Defendant Trabout declares that he did not prescribe the medications that Plaintiff requested because he "determined that they were not medically indicated." *Id.* ¶ 4. Defendant Trabout declares that he examined Plaintiff after the alleged use of force "and found no bruises or abrasions." *Id*. ¶ 6.

Plaintiff ultimately underwent surgery on his right shoulder on February 27, 2007. (Dkt. No. 139-1 at 10.)

Plaintiff filed this action against Defendant Trabout and others on September 29, 2006. (Dkt. No. 1.) Defendant Trabout was served with the complaint on August 6, 2007. (Dkt. No. 38.) However, he did not appear in the action. The other individuals named in the first count ("the County Defendants") appeared in the action, represented by the Tompkins County Attorney's Office. (Dkt. Nos. 26, 31.)

On February 11, 2010, the Court entered summary judgment in favor of the County Defendants. (Dkt. No. 81.) Regarding the first count, the Court found that Plaintiff had failed to raise a triable issue that the County Defendants were deliberately indifferent to Plaintiff's serious medical needs. *Id.* at 16-17. The Court's order explicitly stated that "[n]othing said in this Opinion and Order addresses Plaintiff's claims against" Defendant Trabout. *Id*. at 1 n.1. Plaintiff appealed the order to the Second Circuit. (Dkt. No. 90.)

On February 16, 2010, the Court entered default against Defendant Trabout and advised Plaintiff that he could seek default judgment pursuant to Federal Rule of Civil Procedure 55(b). (Dkt. No. 83.) On March 23, 2010, Plaintiff moved for default judgment against Defendant Trabout. (Dkt. No. 93.)

On September 9, 2010, the Second Circuit dismissed Plaintiff's appeal of the order

granting summary judgment for the County Defendants. (Dkt. No. 102.)

On September 10, 2010, Plaintiff requested that Defendant Trabout either be brought to court and held in contempt for "disobeying the complaint" or, in the alternative, that the Court order Defendant Trabout "or his attorney to have a conference before the Court to discuss the disposal of this case through a settlement agreement." (Dkt. No. 101 at 3.)

On September 27, 2010, this Court received the Mandate of the Second Circuit dismissing Plaintiff's appeal. (Dkt. No. 102.)

On October 7, 2010, attorney Russell E. Maines filed a notice of appearance on behalf of Defendant Trabout. (Dkt. No. 103.) Defendant Trabout moved to set aside the entry of default. (Dkt. No. 105.) Plaintiff opposed the motion. (Dkt. Nos. 111 and 112.)

The Court granted the motion to set aside the entry of default on January 25, 2011. (Dkt. No. 115.) Plaintiff appealed. (Dkt. No. 116.) The Second Circuit dismissed the appeal for lack of jurisdiction. (Dkt. No. 120.)

On June 1, 2011, Plaintiff filed a motion in this Court to vacate the order setting aside the entry of default. (Dkt. No. 119.)

Defendant Trabout filed the pending motion for summary judgment on January 20, 2012. (Dkt. Nos. 130-34.) Plaintiff's first opposition papers argued that the motion should be denied because his motion to vacate the order vacating the entry of default was still pending. (Dkt. No. 136.) Plaintiff then filed additional papers arguing that the motion for summary judgment should be denied while he pursued discovery. (Dkt. No. 139.) Defendant opposes Plaintiff's request for discovery. (Dkt. Nos. 151-52.)

On February 17, 2012, the case was stayed and the matter was referred to the Pro Se

Prisoner Settlement Program. (Dkt. No. 141.) Defendant Trabout requested that the case be removed from the program because of the lack of State defendants and the pending dispositive motion. (Dkt. No. 143.) The Court granted the motion on March 12, 2012, and lifted the stay. (Text Order Mar. 12, 2012.)

On October 16, 2012, the Court denied Plaintiff's motion to vacate the order setting aside the entry of default. (Dkt. No. 148.)

On March 1, 2013, Plaintiff moved to vacate the order granting summary judgment for the County Defendants. (Dkt. No. 161.) The Count Defendants oppose that motion. (Dkt. No. 162.)

## II. DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### A. Legal Standard Governing Motions for Summary Judgment

Under Federal Rule of Civil Procedure 56, summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment bears the initial burden of showing, through the production of admissible evidence, that no genuine issue of material fact exists. *Salahuddin v. Goord*, 467 F.3d 263, 272-73 (2d Cir. 2006). Only after the moving party has met this burden is the nonmoving party required to produce evidence demonstrating that genuine issues of material fact exist. *Id*. at 273. The nonmoving party must do more than "rest upon the mere allegations . . . of the [plaintiff's] pleading" or "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 & n.11 (1986). Rather, a dispute regarding a material fact is *genuine* "if the evidence is such that a reasonable jury could

5

return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material[1] fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008).

B.  **Plaintiff's Request for Discovery**

Plaintiff requests an order staying the summary judgment motion for 120 days so that he can pursue settlement negotiations and obtain discovery from Defendant Trabout. (Dkt. No. 139.) Defendant Trabout opposes the motion. (Dkt. Nos. 151-52.)

Under Federal Rule of Civil Procedure 56(d), if a party against whom summary judgment is sought "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d). In order to obtain relief under Federal Rule of Civil Procedure 56(d), "a party must file an affidavit describing: (1) what facts are sought and how they are to be obtained; (2) how these facts are reasonably expected to raise a genuine issue of material fact; (3) what efforts the affiant has made to obtain them; and (4) why the affiant's efforts were unsuccessful." *Gualandi v. Adams*, 385 F.3d 236, 244 (2d Cir. 2004). Even where the party seeking relief provides such an affidavit, "a district court may refuse to allow additional discovery if it deems the request to be based on speculation as to what potentially could be discovered." *Nat'l Union Fire Ins. Co. v. Stroh Cos.*, 265 F.3d 97, 117 (2d Cir. 2001) (citations

---

[1] A fact is "material" only if it would have some effect on the outcome of the suit. *Anderson*, 477 U.S. at 248.

6

omitted) (internal quotations omitted). *See also Seneca Beverage Corp. v. Healthnow N.Y., Inc.*, 200 F. A'ppx 25, 27 (2d Cir. 2006).

Here, Plaintiff states that he "hopes to uncover some expert opinions and facts concerning the correlation of the surgery that was conducted on the right shoulder of the plaintiff several years after plaintiff's arrest." (Dkt. No. 139 ¶ 8.) Plaintiff also seeks a copy of Defendant Trabout's contract from 2005, which he contends "is vital to refute the defendant[']s bad faith allegation, that, 'he did not know that he was not represented by the County Attorney's Office' when he failed . . . to answer the complaint served on him." *Id.* ¶ 10 (punctuation in original). Plaintiff "contends that he will be able to ascertain material facts that would preclude granting summary judgment" through discovery because "[u]pon information and belief, there are a host of relevant documents, policies, and other material that can be uncovered." *Id.* ¶¶ 16-17.

Plaintiff has not met his burden under Rule 56(d). Information about Defendant Trabout's contract would not lead to "facts essential to justify [Plaintiff's] opposition" to the motion for summary judgment. The issues presented in the motion for summary judgment concern the medical care that Defendant Trabout provided. By stating that the contract would "refute the defendant[']s bad faith allegation, that, 'he did not know that he was not represented by the County Attorney's Office,'" Plaintiff appears to be attempting to relitigate the motion to set aside the default rather than opposing the summary judgment motion. Plaintiff further argues that "[u]pon information and belief, the plaintiff knows of a incident where Dr. Trabout utilized his position as a New York State Dep't employee to impeded in plaintiff[']s lawsuit." (Dkt. No. 139 ¶ 15.) This is not the first time Plaintiff has raised this issue. In his opposition to the motion to set aside the entry of default, Plaintiff alleged that he had lost substantial amounts of evidence

concerning the case as he moved from facility to facility and attributed some or all of this loss of evidence to a visit by Defendant Trabout to Mohawk Correctional Facility, where Plaintiff was then housed. (Dkt. No. 112 at 4.) Plaintiff raised this same argument in opposition to the County Defendants' motion for summary judgment. (Dkt. No. 79 at 12-13.) Yet, at that time, Plaintiff was able to produce eighty-three pages of exhibits (Dkt. No. 79-1) and the Court evidently did not credit his assertion regarding Defendant Trabout's role in the alleged loss of evidence because the Court's order (Dkt. No. 81) did not mention the allegation. The other reasons that Plaintiff proffers for the Court deferring consideration are not sufficiently concrete to meet his burden under Rule 56(d). His "hope" and his "information and belief" about expert opinions and facts that may or may not exist constitute mere "speculation as to what potentially could be discovered." Therefore, I recommend that the Court deny Plaintiff's motion for an order granting discovery and staying the action.

### C. Merits

Plaintiff alleges that Defendant Trabout violated his constitutional rights by failing to provide adequate medical care. (Dkt. No. 7 at 22-25.) Defendant Trabout moves for summary judgment. (Dkt. Nos. 130-33.) Defendant argues that (1) the amended complaint fails to state a constitutional claim; (2) Plaintiff's claims for mental or emotional injury are barred by the Prison Litigation Reform Act; and (3) Plaintiff is collaterally estopped from relitigating the claim. (Dkt. No. 133 at 2.) The Court will address only the first argument, as it is dispositive.

The complaint states that Plaintiff was "a detainee at the Tompkins County Jail." (Dkt. No. 7 ¶ 3.) It is not clear whether Plaintiff was a pre-trial detainee or whether he had been convicted and was awaiting placement in the DOCCS system. This raises an issue as to the

correct standard to apply to his medical claim. The Second Circuit has stated that:

> [a] convicted prisoner's claim of deliberate indifference to his medical needs by those overseeing his care is analyzed under the Eighth Amendment because the right the plaintiff seeks to vindicate arises from the Eighth Amendment's prohibition of "cruel and unusual punishment." *Weyant v. Okst*, 101 F.3d 845, 856 (2d Cir. 1996). In the case of a person being held prior to trial, however, "the 'cruel and unusual punishment' proscription of the Eighth Amendment to the Constitution does not apply," because "as a pre-trial detainee [the plaintiff is] not being 'punished,'" *Cuoco v. Moritsugu*, 222 F.3d 99, 106 (2d Cir. 2000); *see also Weyant*, 101 F.3d at 856. Instead, a person detained prior to conviction receives protection against mistreatment at the hands of prison officials under the . . . Due Process Clause of the Fourteenth Amendment if held in state custody.

*Caiozzo v. Koreman*, 581 F.3d 63, 69 (2d Cir. 2009). Despite the distinction between the source of rights for detainees and prisoners, the same analysis is applied to Fourteenth Amendment medical claims involving non-prisoners as to Eighth Amendment medical claims regarding prisoners. *See id.* at 66 (applying standard from Eighth Amendment jurisprudence to pretrial detainee's due process claims regarding medical care).

There are two elements to a prisoner's claim that prison officials violated his or her constitutional right to receive adequate medical care: "the plaintiff must show that she or he had a serious medical condition and that it was met with deliberate indifference." *Caiozzo*, 581 F.3d at 72 (citation omitted) (punctuation omitted). "The objective 'medical need' element measures the severity of the alleged deprivation, while the subjective 'deliberate indifference' element ensures that the defendant prison official acted with a sufficiently culpable state of mind." *Smith v. Carpenter*, 316 F.3d 178, 183-84 (2d Cir. 2003) (citation omitted).

Defendant's argument regarding medical deliberate indifference states, in full:

9

> There is no evidence in the record suggesting either that Plaintiff had serious medical needs <u>or</u> that Defendant was deliberately indifferent to such alleged needs. The affidavit of Debra Debartolo, the jail nurse, and the Declaration of Defendant establish that the "Plaintiff was treated regularly for a variety of alleged maladies. . . . He simply disagrees with several medical decisions made by the medical staff." *See Mosby I*, p. 16. "There is nothing in the facts suggesting deliberate indifference to his serious medical needs." *See id.*, p. 17.
>
> This is merely a claim for negligence which is not actionable as a claim under 42 U.S.C. Section 1983. Accordingly, Defendant's motion should be granted.

(Dkt. No. 133 at 3, emphasis in original.)

As this argument shows, Defendant asserts, without citation to evidence, that Plaintiff did not suffer from a serious medical condition. A "serious medical condition" is "a condition of urgency, one that may produce death, degeneration, or extreme pain." *Nance v. Kelly*, 912 F.2d 605, 607 (2d Cir. 1990) (Pratt, J., dissenting), *accord Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994), *cert. denied*, 513 U.S. 1154 (1995); *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998). Relevant factors to consider when determining whether an alleged medical condition is sufficiently serious include, but are not limited to: (1) "the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment;" (2) "the presence of a medical condition that significantly affects an individual's daily activities;" and (3) "the existence of chronic and substantial pain." *Chance*, 143 F.3d at 702 (citation omitted) (internal quotations omitted).

Defendant's statement of material facts does not include any information at all about Plaintiff's medical condition. (Dkt. No. 132.) Defendant has thus not met his initial burden of showing, through the production of admissible evidence, that no genuine issue of material fact

exists. The burden therefore does not shift to Plaintiff to produce evidence demonstrating that genuine issues of material fact exist. Accordingly, Defendant is not entitled to summary judgment on the ground that Plaintiff did not suffer from a serious medical need.

Defendant further argues that he was not deliberately indifferent to Plaintiff's medical needs. (Dkt. No. 133 at 3.) Medical mistreatment rises to the level of deliberate indifference only when it "involves culpable recklessness, i.e., an act or a failure to act . . . that evinces 'a conscious disregard of a substantial risk of serious harm.'" *Chance*, 143 F.3d at 703 (quoting *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996). Thus, to establish deliberate indifference, an inmate must prove that (1) a prison medical care provider was aware of facts from which the inference could be drawn that the inmate had a serious medical need; and (2) the medical care provider actually drew that inference. *Farmer v. Brennan*, 511 U.S. 825, 838 (1994). The inmate then must establish that the provider consciously and intentionally disregarded or ignored that serious medical need. *Id.* at 835. An "inadvertent failure to provide adequate medical care" does not constitute "deliberate indifference." *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976). Moreover, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim . . . under the Eighth Amendment." *Id.* at 106. Stated another way, "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Id*.; *see also Smith*, 316 F.3d at 184 ("Because the Eighth Amendment is not a vehicle for bringing medical malpractice claims, nor a substitute for state tort law, not every lapse in prison medical care will rise to the level of a constitutional violation."). Further, inmates "do not have a right to [choose] a specific type of treatment." *Veloz v. New York*, 339 F. Supp. 2d 505, 525 (S.D.N.Y. 2004). More specifically,

"[d]ifferences in opinions between a doctor and an inmate patient as to the appropriate pain medication clearly do not support a claim that the doctor was deliberately indifferent to the inmate's serious medical needs." *Wright v. Genovese*, 694 F. Supp. 2d 137, 160 (N.D.N.Y. 2010) (punctuation omitted).

Here, Defendant Trabout declares that he did not order x-rays or MRIs because he "did not feel the patient needed the studies based on [his] clinical evaluation and judgment." (Dkt. No. 131-3 ¶ 5.) Defendant Trabout declares that he did not prescribe the medications that Plaintiff requested because he "determined that they were not medically indicated." *Id.* ¶ 4. Defendant Trabout declares that he examined Plaintiff after the alleged use of force "and found no bruises or abrasions." *Id*. ¶ 6. Defendant Trabout's declaration meets his burden of showing that he was not deliberately indifferent to Plaintiff's medical needs. The burden thus shifts to Plaintiff to raise a triable issue of fact. Plaintiff has not met that burden. Plaintiff's only substantive argument opposing the motion for summary judgment involves an issue with his medical records. In the medical records summarizing the treatment received after the alleged use of force, a 6:00 p.m. notation by Defendant Trabout appears before a 1:00 p.m. entry by Nurse Debra Debartolo. (Dkt. No. 139-1 at 7.) The next two entries on the page proceed in chronological order. *Id.* Plaintiff argues that a reasonable juror could conclude that the medical record entries following the alleged use of force are fabricated because they are in reverse chronological order. (Dkt. No. 139 ¶ 14.) This argument, although creative, is the type of "metaphysical doubt as to the material facts" that is insufficient to raise a triable issue. *See Matsushita Elec. Indus. Co.*, 475 U.S. at 586 & n.11. Plaintiff's belief that many of the documents provided to him have been altered or fabricated is a recurring theme in this litigation,

which has repeatedly been rejected.  (*See, e.g.*, Dkt. No. 161 at 15.)  Plaintiff's opposition does not cite any evidence regarding Defendant Trabout's treatment of his other conditions.  Therefore, I recommend that the Court grant Defendant Trabout's motion for summary judgment.

## III. PLAINTIFF'S MOTION TO VACATE THE ORDER GRANTING SUMMARY JUDGMENT FOR DEFENDANT BEZERGANIAN

Plaintiff moves to include a medical report in evidence and to vacate the order granting summary judgment for former Defendant Bezerganian, one of the County Defendants.  (Dkt. No. 161.)  The County Defendants oppose the motion.  (Dkt. No. 162.)

"A court may justifiably reconsider its previous ruling if: (1) there is an intervening change in the controlling law; (2) new evidence not previously available comes to light; or (3) it becomes necessary to remedy a clear error of law or to prevent manifest injustice."  *Delaney v. Selsky*, 899 F. Supp. 923, 925 (N.D.N.Y. 1995) (citing *Doe v. N.Y.C. Dep't of Soc. Servs.*, 709 F.2d 782, 789 (2d Cir. 1983)).  The standard for granting a motion for reconsideration is strict.  *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).  A motion for reconsideration "should not be granted where the moving party seeks solely to relitigate an issue already decided."  *Id.*  Furthermore, a motion for reconsideration is not to be used for "presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.'"  *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998).

Plaintiff contends that ten items of new evidence have come to light: (1) a March 30, 2006, letter from a paralegal at Tompkins/Tioga Neighborhood Legal Services asking Plaintiff to forward his medical records from the Tompkins County Jail to support Plaintiff's application for Social Security disability benefits; (2) a December 7, 2012, order from the State of New York

13

Supreme Court, County of Tompkins, denying Plaintiff's request to compel Tompkins Mental Health, former Defendant Bezerganian, and Tompkins Legal Services to provide Plaintiff with copies of his medical records; (3) a DOCCS mental health referral form dated July 12, 2010, describing an interview with Plaintiff; (4) a DOCCS emergency admission referral form dated December 7, 2010, detailing Plaintiff's mental health complaints and medications; (5) a DOCCS mental health referral form dated August 20, 2007, describing an interview with Plaintiff; (6) a DOCCS mental health referral form with an illegible date describing an interview with Plaintiff; (7) a report of a psychiatric evaluation of Plaintiff dated April 28, 2004; (8) a report of an orthopedic examination of Plaintiff dated April 28, 2004; (9) a form describing Plaintiff's admission to a psychiatric hospital on January 4, 2003; and (10) Tompkins County Mental Health Services charts from 2004. (Dkt. No. 161 at 10-48.)

For new evidence to justify reconsideration, it must be of such importance that it probably would have changed the outcome of the prior ruling. *United States v. Int'l Bhd. of Teamsters*, 247 F.3d 370, 392 (2d Cir. 2001). None of the new evidence that Plaintiff proffers shows any tendency to change the outcome of the Court's prior ruling granting summary judgment for Defendant Bezerganian. Therefore, I recommend that the Court deny Plaintiff's motion to vacate the Court's order granting summary judgment for Defendant Bezerganian.

**ACCORDINGLY**, it is

**RECOMMENDED** that the Court **<u>DENY</u>** Plaintiff's motion for an order granting discovery and for an order staying the action (Dkt. No. 139); and it is further

**RECOMMENDED** that the Court **<u>GRANT</u>** Defendant Trabout's motion for summary judgment (Dkt. No. 130); and it is further

**RECOMMENDED** that the Court **DENY** Plaintiff's motion to vacate (Dkt. No. 161).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) (per curiam)); 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 72, 6(a).

Dated: November 7, 2014
       Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge